**14**

CAPITAL VENTURES
INTERNATIONAL, Plaintiff–Appellant,

v.

REPUBLIC OF ARGENTINA,
Defendant–Appellee.

Nos. 07–0800–cv (L), 07–0810–cv (CON).

United States Court of Appeals,
Second Circuit.

May 27, 2008.

M. Norman Goldberger, Hangley Aronchick Segal & Pudlin (Kenneth G. Roberts & Jennifer F. Beltrami, Wolf, Block, Schorr and Solis–Cohen LLP, on the brief) New York, NY, for Plaintiff–Appellant.

Jonathan I. Blackman (Carmine D. Boccuzzi & Christopher P. Moore, on the brief) Cleary Gottlieb Steen & Hamilton LLP, New York, NY, for Defendant–Appellee.

PRESENT: Hon. WILFRED FEINBERG, Hon. ROGER J. MINER, Hon. BARRINGTON D. PARKER, Circuit Judges.

### Summary Order

Plaintiff–Appellant Capital Ventures International ("CVI") appeals the ruling of the United States District Court for the Southern District of New York (Griesa, *J.*), denying its request for an order directing the seizure of so-called "excess Interest Collateral" that is currently subject to attachment and held by the Federal Reserve Bank of New York ("FRBNY") on behalf of the defendant-appellee, the Republic of Argentina. We assume the parties' familiarity with the underlying facts and procedural history of the case.

We first address the issue of jurisdiction. "As a general rule, we lack jurisdiction to hear an appeal unless the decision is, or is embodied in, an order or judgment that is final within the 1 meaning of 28 U.S.C. § 1291." [1] *Swede v. Rochester Carpenters Pension Fund,* 467 F.3d 216, 219

---

1. 28 U.S.C. § 1291 provides, in pertinent part, that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

(2d Cir.2006) (internal quotation marks omitted). CVI appeals a ruling of the district court made prior to the entry of final judgment in the consolidated actions. Since this appeal was filed, the district court has entered two judgments in favor of CVI, which "end[ed] the litigation on the merits and [left] nothing for the court to do but execute the judgment." *Ibeto Petrochem. Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 61 (2d Cir.2007). Because "the policy against and the probability of avoiding piecemeal review are less likely to be decisive after judgment than before," *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 93 (2d Cir.2001), we treat this appeal as one made from the denial of an attempt to execute assets in satisfaction of a judgment, rather than an interlocutory appeal.

We review the district court's ruling denying CVI immediate seizure of the excess Interest Collateral *de novo* with respect to its interpretation of the Collateral Pledge Agreement. *See, e.g., Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir.2006). Fed.R.Civ.P. 69(a) applies and requires the application of New York law. *See, e.g., Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir.2002). N.Y. C.P.L.R. § 5201(b) (2006) provides that "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment." Under New York law, "a party seeking to enforce a judgment 'stand[s] in the shoes of the judgment debtor in relation to any debt owed him or a property interest he may own,'" and "a party cannot 'reach ... assets in which the judgment debtor has no interest.'" *Karaha Bodas Co.*, 313 F.3d at 83 (quoting *Bass v. Bass*, 140 A.D.2d 251, 528 N.Y.S.2d

558, 561 (1988)). The issue raised by this appeal is whether Argentina may assign or transfer the so-called excess Interest Collateral—the funds in its FRBNY Interest Collateral accounts that are in excess of its "Secured Interest Obligations" to the Brady Bondholders—thereby entitling CVI to the funds.

According to the Collateral Pledge Agreement, Argentina may not currently secure release of any excess Interest Collateral, much less "assign or transfer" such funds. Section 2.02(a) of the Agreement provides that Argentina has pledged "for the ratable benefit of the [Brady Bondholders]" a "first priority security interest in" all of the assets held in its Interest 1 Collateral accounts; under Section 2.02(b), the pledge secures "the payment of all *unpaid* 2 interest" on the bonds, up to the amount of Argentina's "Secured Interest Obligations." (Emphasis added.) According to Section 9.05, this security interest continues until the Brady bonds "are no longer outstanding," which will be in 2023 when they mature, and until "all interest on the [bonds] ... has been paid in full." Although Section 6.05(a) permits Argentina to request any excess Interest Collateral, Section 6.05(c) precludes the release of *any* Interest Collateral so long as Notices of Interest Non–Payment remain outstanding. Furthermore, Section 6.05(a)(iv) requires that any release request by Argentina be accompanied by a schedule showing that following the release of the funds, sufficient Interest Collateral will remain to pay any outstanding interest due to the Brady Bondholders from the last date on which interest was paid in full, and to pay the next interest payment due. If Argentina's release request comports with these provisions, the Brady Bondholders' lien on the released funds will terminate, *see* Collateral 1 Pledge Agreement,

§ 6.05(b), permitting Argentina to assign or transfer the released funds.

It is undisputed that Argentina is in default of the Collateral Pledge Agreement because it has missed interest payments due to the Brady Bondholders. The district court properly found that because of these missed interest payments, Argentina "cannot recover [the] excess interest collateral" and that the funds "must remain on deposit with the [FRBNY] as of the present time." Moreover, it is undisputed that the amount of Argentina's missed interest payments to the Brady Bondholders currently exceeds the total amount of funds in the Interest Collateral accounts—in other words, there is presently *no* "excess" Interest Collateral. Argentina therefore cannot provide the certification required by Section 6.05(a)(iv). Because Argentina cannot secure, much less assign or transfer, any excess Interest Collateral, the district court properly denied CVI's request to seize these funds.

CVI's arguments to the contrary fail. CVI claims that Section 6.05(c) of the Collateral Pledge Agreement does not apply because Argentina may secure release of excess Interest Collateral, even after the issuance of a Notice of Interest Non–Payment, in the event that a Notice of Interest Payment is issued. This argument is easily rejected in light of Argentina's undisputed and continuing default on its interest payments to the Brady Bondholders. CVI also contends that the well-settled New York law that a judgment creditor "stands in the shoes" of the judgment debtor should not be applied where Argentina is unable to access the excess Interest Collateral solely due to its own default under the Collateral Pledge Agreement. We construe this argument as one urging us to reject settled New York law, which we decline to do. *See, e.g., Karaha Bodas Co.,* 313 F.3d at 83; *Vantrel Enters., Inc. v.*

*Citibank, N.A.,* 272 A.D.2d 609, 708 N.Y.S.2d 452, 453 (2000); *Bass,* 528 N.Y.S.2d at 561. We have considered CVI's other contentions and find them to be without merit.

For the foregoing reasons, the ruling of the district court is AFFIRMED.