08-5621-cv
*Aurelius Capital Partners v. The Republic of Argentina*

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: May 11, 2009          Decided: October 15, 2009)

Docket No. 08-5621-cv(L),08-5619-cv (con), 08-5620-cv (con), 08-5622-cv (con), 08-5623-cv (con), 08-5624-cv(xap), 08-5626-cv(con), 08-5630-cv-(con), 08-5691-cv(con), 08-5692-cv(con), 08-5693-cv(con), 08-5694-cv(con), 08-5695-cv-(con), 08-5696-cv(con), 08-5697-cv(con), 08-5698-cv-(con), 08-5699-cv(con), 08-5700-cv(con), 08-5701-cv(con), 08-5702-cv(con), 08-5703-cv(con), 08-5705-cv(con), 08-5708-cv(con), 08-5709-cv(con), 08-5710-cv(con), 08-5711-cv(con), 08-5712-cv(con), 08-5713-cv(con), 08-5714-cv(con), 08-5723-cv(con), 08-5726-cv(con), 08-5727-cv(con), 08-5729-cv(con), 08-5730-cv(con), 08-5731-cv(con),  08-5734-cv(con), 08-5735-cv(con), 08-5737-cv(con), 08-5738-cv(con), 08-5740-cv(con), 08-5741-cv(con), 08-5744-cv(con), 08-5746-cv(con), 08-5747-cv(con), 08-5748-cv (con), 08-5749-cv(con), 08-5750-cv(con), 08-5751-cv(con), 08-5753-cv(con), 08-5754-cv(con), 08-5755-cv(con), 08-5756-cv(con), 08-5757-cv(con),  08-5758-cv(con),08-5759-cv(con),  08-5760-cv(con), 08-5761-cv(con), 08-5762-cv(con), 08-5769-cv(con), 08-5771-cv(con), 08-5774-cv(con), 08-5775-cv(con), 08-5776-cv(con), 08-5778-cv(con), 08-5779-cv(con), 08-5780-cv(con), 08-5782-cv(xap), 08-5783-cv(con), 08-5790-cv(con), 08-5792-cv(con), 08-5793-cv(con), 08-5794-cv (con), 08-5796-cv(con), 08-5799-cv(con), 08-5800-cv(con), 08-5802-cv(con), 08-5803-cv(con), 08-5807-cv(con), 08-5808-cv(con), 08-5811-cv(con), 08-5817-cv(con), 08-5821-cv(con), 08-5825-cv(con), 08-5829-cv(con) 08-5869-cv(con), 08-5870-cv(con), 08-5872-cv(con), 08-5885-cv(con),08-5910-cv(con),08-5913-cv(con), 08-5981-cv(con), 08-6133-cv(con), 08-6135-cv(con), 08-6136-cv(xap), 08-6137-cv(con), 08-6138-cv(con), 08-6242-cv(con), 08-6243-cv(con), 08-6249-cv(con), 08-6250-cv(con), 08-6251-cv(con), 08-6252-cv(con), 08-6253-cv(con), 08-6254-cv(con), 08-6255-cv(con), 08-6256-cv(con), 08-6257-cv(con), 08-6260-cv(con), 08-6261-cv(con), 08-6269-cv(con), 08-6270-cv(con), 09-0151-cv(con), 09-0155-cv(con), 09-0158-cv(con), 09-0160-cv(con), 09-0161-cv(con), 09-0163-cv(con), 09-0164-cv(con), 09-0165-cv(con), 09-0525-cv(con), 09-0803-cv (con), 09-0812-cv (con).

```
- - - - - - - - - - - - - - - - - - - - - -x
```

AURELIUS CAPITAL PARTNERS, LP, *et al.*,

       *Plaintiffs-Appellees,*

    - v.-

THE REPUBLIC OF ARGENTINA,

       *Defendant-Appellant,*

ARAUCA BIT AFJP S.A., *et al.*,

       *Interested-Non-Party Appellants,*

ADMINISTRACIÓN NACIONAL DE SEGURIDAD SOCIAL,

       *Interested-Non-Party-Appellant.*

```
- - - - - - - - - - - - - - - - - - - - - -x
```

    Before:      WALKER and WALLACE,[*] <u>Circuit Judges</u>.[**]

    The Republic of Argentina appeals from the district court's orders of attachment and execution entered in late 2008 over Argentine social security funds, which under proposed Argentine legislation were to be transferred to the

---

[*] The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

[**] The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009.  The two remaining members of the panel, who are in agreement, have determined the matter.  *See* 28 U.S.C. § 46(d); Local Rule 0.14(b); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

Administración Nacional de Seguridad Social (the Administration), an Argentine governmental entity. The orders were confirmed in the district court's opinion and order dated December 11, 2008, immediately after the legislation transferring the funds to the Administration became effective. We reverse the decision of the district court and vacate the orders.

JONATHAN I. BLACKMAN, Cleary Gottlieb Steen & Hamilton LLP (Carmine D. Boccuzzi, Christopher P. Moore, Rahul Muhki, Benjamine J. A. Sauter, and Michael J. Byars, *on the brief*), New York, New York, *for Defendant-Appellee-Cross-Appellant Republic of Argentina.*

MARCO E. SCHNABL, Skadden, Arps, Slate, Meagher & Flom LLP (Lauren E. Aguiar, Timothy G. Nelson, and Sarah E. McCallum, *on the brief*), New York, New York, *for Non-Party Appellant Administración Nacional de Seguridad Social.*

BARRY R. OSTRAGER, Simpson, Thacher & Bartlett LLP (Tyler B. Robinson and David Elbaum, *on the brief*), New York, New York, *for Plaintiffs-Appellees Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd. and Blue Angel Capital I LLC.*

DAVID DUNN, Hogan & Hartson LLP, New York, New York, *for Plaintiffs-Appellees GMO Emerging Country Debt L.P., GMO Emerging Country Debt Investment Fund PLC, GMO Emerging Country Debt Fund, and Teachers Insurance and Annuity Association of America.*

THEODORE B. OLSON, Gibson, Dunn & Crutcher LLP (Matthew D. McGill and Jason J. Mendro, Gibson, Dunn & Crutcher LLP, Robert A. Cohen and Dennis H. Hranitzky, Dechert LLP, and David W. Rivkin, John

3

B. Missing, and Suzanne M. Grosso, Debevoise &
Plimpton LLP, *on the brief*), New York, New York,
*for Plaintiffs-Appellees NML Capital, Ltd. and EM
Ltd.*

J. CLIFFORD WALLACE, <u>Senior Circuit Judge</u>:

The Republic of Argentina (Republic) appeals from the district court's orders of attachment and execution (Thomas P. Griesa, *Judge*) entered in late 2008 over Argentine social security funds, which under proposed Argentine legislation were to be transferred to the Administración Nacional de Seguridad Social (the Administration). The orders were confirmed in the district court's opinion and order dated December 11, 2008, immediately after the legislation transferring the funds to the Administration became effective. The district court had jurisdiction pursuant to 28 U.S.C. § 1330. We have jurisdiction over the appeal from the district court's December 11, 2008 order and opinion pursuant to 28 U.S.C. § 1291, and we have jurisdiction over the restraining orders, orders of attachment and writs of execution pursuant to 28 U.S.C. § 1292(a)(1) and the collateral order doctrine described in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949). Because we conclude that the funds were immune from attachment under the Foreign Sovereign Immunities Act (Act), 28 U.S.C. §§

4

1602-1611, we reverse the decision of the district court and vacate its orders.

I

In 2001, the Republic defaulted on payments on debt instruments issued to bondholders. In connection with the issuance of the Argentine bonds, the Republic had agreed to a waiver of sovereign immunity. As a result of the default, many bondholders, including the majority of the plaintiffs in this case, obtained judgments against the Republic. Since the judgments against the Republic were entered, the bondholders have attempted to recover on the judgments. Most of these attempts have been unsuccessful "because they concerned property that was immune from execution under the [Act] or property that did not belong to the Republic." *See* Br. of Def.-Appellant Republic of Argentina at 4-5, *citing*, *inter alia*, *Capital Ventures Int'l v. Republic of Argentina*, 280 F. App'x 14, 15 (2d Cir. 2008) and *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 475-76 (2d Cir. 2007).

On October 21, 2008, the President of the Republic announced that private pension funds, held and managed on behalf of Argentine workers and pensioners, would be transferred to the Administration. This appeal stems from

5

certain judgment holders' attempts to execute upon some of those funds in order to satisfy their judgments.  Before describing the proceedings in the district court whereby the plaintiffs attempted to execute against the pension funds, background on the Administration and the private pension funds is necessary.

The Argentine constitution requires that the government provide social security benefits to its citizens.  Const. of the Argentine Nation, First Part, Ch. 1, § 14bis, *available at* http://www.argentina.gov.ar/argentina/portal/documentos/constitucion_ingles.pdf (requiring that "[t]he State shall grant the benefits of social security, which shall be of an integral nature and may not be waived").  In 1991, the Republic adopted a decree creating a unified social security system, known as the "Distribution System."  Later that year, the Administration was established for the purpose of administering the Distribution System.  The Administration also administered other programs, including welfare and unemployment benefits.  In 1993, the Argentine government reformed the pension system to create a hybrid regime that allowed Argentine workers and pensioners to choose between

the Distribution System and a new private plan, the "Capitalization System." Under the Capitalization System, workers made contributions to individual accounts managed by private corporations, which administered the retirement and pension funds and provided payments and benefits due to the pensioners in exchange for management fees. By law, the assets in the funds were only to be used to provide social security benefits, and the private corporations did not have property rights in the funds' assets. Some of the funds were held in New York, where the private corporations invested the funds to grow for the benefit of the pensioners.

Dissatisfied with the Capitalization System, in 2007, the Argentine Congress passed a law that allowed Capitalization System participants to switch back to the Distribution System. In order to facilitate this transition, the Argentine Congress passed a decree establishing the Sustainability Guarantee Fund (Guarantee Fund), which received the social security funds transferred from the Capitalization System and was managed by the Administration. The law establishing the Guarantee Fund

provided that its assets could be used only to provide social security benefits to qualifying participants.

Then, on October 21, 2008, proposed legislation was introduced in the Argentine legislature requiring the reunification of the bifurcated social security system. The proposed legislation required all of the assets in the Capitalization System to be transferred to the Guarantee Fund. The proposed legislation also reaffirmed that assets in the Guarantee Fund may only be used to provide social security benefits for Argentine pensioners.

On October 29, 2008, the district court signed an Order to Show Cause in three of the cases brought by Aurelius Capital Partners and Blue Angel Capital against the Republic based on defaulted bonds. The Order to Show Cause set for hearing a motion to authorize the United States Marshals Service to serve a writ of execution covering the retirement and pension funds, and related property located in New York and belonging to the Republic, the Administration, and the private corporations holding the funds under the Capitalization System. Although the plaintiffs in the three initial cases moved for relief only against the Republic and did not name either the Administration or the private

8

corporations as parties, the district court nevertheless authorized the plaintiffs to make immediate service of restraining notices to the Republic, the Administration and the private corporations, which prevented removal of the retirement and pension funds or any of their assets from the United States. The restraining notices did not prohibit the parties from engaging in daily trading activities, provided that no property left the United States. The theory behind the orders was that once the proposed legislation had been enacted and the property had been transferred to the Administration, it would essentially become property of the Republic; if the property belongs to the Republic, then, because the Republic had waived sovereign immunity with respect to the bondholders' judgments, judgment could be executed against it.

Two days after the October 29 order, EM Ltd. and NML Capital, Ltd. obtained "me too" *ex parte* writs of execution and restraining notices in their respective post-judgment cases, as well as restraining orders and attachments of the funds managed by the Administration and/or the private corporations. By the end of November 2008, plaintiffs in 72 actions had obtained either writs of execution and

9

restraining notices in post-judgment cases or restraining orders and orders of attachment in cases where judgment had not yet been entered (together, the Orders). The district court found that, as a result of the Orders, approximately $200 million was frozen in New York accounts, primarily investment accounts.

On November 12, 2008, the Republic moved to vacate the Orders, and the district court held a hearing on the motion on November 14, 2008. The Republic argued that it had no interest in the social security assets managed by the private corporations or the property administered by the Administration. It also argued that the Administration is an "agency or instrumentality" separate from the Republic for purposes of the Act, and that therefore, its assets are not available to creditors of the Republic. The Republic further argued that the property managed by the Administration and the private corporations is used for a non-commercial purpose – payment of pension benefits – and that therefore, the Republic's creditors were precluded from executing upon the property under the Act. The Administration and the private corporations, appearing on a limited and special basis as interested non-parties,

10

likewise opposed the plaintiffs' motions, arguing that the Administration was a juridically distinct, independent political subdivision of the Republic and therefore not liable for the Republic's debts.  At the conclusion of the hearing, the district court continued the Orders.  In ordering continuation of the previously entered orders, the court stated that it was exercising its "equitable power to simply hold the status quo and prevent assets from getting spirited out of the country."  The court opined that it had previously only entered a "freeze order," and not an "attachment," which the court said would have been inappropriate at the time.

The district court also directed the parties to engage in discovery concerning, *inter alia*, the Republic's use of the social security assets, the Administration's institutional relationship to the executive branch of the Argentine government, and the location of any additional custodial assets that may be held in the United States. However, the Administration declined to participate in discovery, claiming that it was not required to submit to discovery because it was not a party to the action, and

11

because the court lacked jurisdiction over it pursuant to the Act.

On December 9, 2008, the proposed legislation became law, mandating that the majority of the funds previously administered by the private corporations be transferred in kind to the Guarantee Fund administered by the Administration in Argentina. The Argentine law states that the assets of the funds shall be invested "by applying criteria of sufficient security and profitability while contributing to the sustainable development of the real economy." Law 26,425, art. 8, Dec. 9, 2008. The law states that "[t]he total amount of the funds may only be employed to make payments in the Argentine Integrated Pension System." *Id.* The law further provides that social security funds managed by the Administration may be invested only in Argentine securities. *Id.*

On December 11, 2008, the district court issued an Opinion and Order granting the motions for writs of execution and confirming its prior Orders authorizing restraints and attachment of pension funds managed by the Administration and the private corporations. In its opinion, the district court held that the Administration is

a political subdivision of the Republic, and therefore, the Administration is subject to the jurisdiction of the court because the Republic is subject to the court's jurisdiction; and similarly, the assets of the Administration are subject to attachment and execution to the same degree as are the assets of the Republic.

Next, the district court considered whether the plaintiffs had established that the funds were being "used for a commercial activity in the United States" as required by the Act. *See* 28 U.S.C. § 1610(a), (d). The district court recognized that the social security funds were required by Argentine law to be used solely to maintain the social security system, and that those funds were, at the time the orders were signed, in the hands of the corporations, which were indisputably private entities. However, applying the Supreme Court's holding in *Republic of Argentina v. Weltover*, 504 U.S. 607 (1992), the district court held that the funds were "used for a commercial activity in the United States" because the funds were invested in the hope of profit while under the administration of the private corporations, and because the transfer of the funds to the Administration was undertaken

13

not for the benefit of the pension funds, but instead "to effectively appropriate funds for non-pension governmental uses." The district court concluded that the funds were not immune from attachment and execution under the Act. The district court also held that the restraining orders filed before the Argentine legislation took effect were valid.

On March 4, 2009, the district court issued an order authorizing the U.S. Marshal Service to serve the plaintiffs' writs of execution on garnishee financial institutions where the funds are currently held. However, the district court directed that the assets not be seized until further order of the court. Nevertheless, because the district court's prior orders "froze" the funds in the United States, the Administration has been unable to take possession of the funds, and the new law transferring the funds to the Administration has not been implemented. The Republic, the Administration, and the private corporations appeal from the district court's orders.

## II

Before we discuss the appeal's substance, we must address a threshold jurisdictional question: whether the

14

Administration, a non-party appellant, has standing to challenge the district court's issuance of the Orders.

In this case, the plaintiffs did not name the Administration as a party to the actions to enforce judgments against the assets of the Administration. The Administration appeared on a special and limited basis before the district court to argue in favor of vacating the district court's Orders regarding attachment and execution. The Administration filed a memorandum and declarations in opposition to the Order to Show Cause and restraining orders. On appeal, the Administration filed a brief as a non-party appellant and appeared at oral argument. Plaintiffs-Appellees GMO Emerging Country Debt L.P., GMO Emerging Country Debt Investment Fund PLC, GMO Emerging Country Debt Fund, and Teachers Insurance and Annuity Association of America (together, GMO) argue that the Administration, as a non-party to this action, does not have standing to offer argument in the appeal from the district court's decision because the Administration did not intervene in the district court proceedings.

Although "[s]tanding to appeal is an essential component of our appellate jurisdiction,... [t]he question

of nonparty standing to appeal 'does not implicate the jurisdiction of the courts under Article III of the Constitution.'" *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C.*, 467 F.3d 73, 77 (2d Cir. 2006) *quoting Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002). "Rather, the issue is whether an appellant should be treated as a party for purposes of appealing a judgment when it was not a party in the proceedings below." *Id.* "As a general rule, only a party of record in a lawsuit has standing to appeal from a judgment of the district court." *Hispanic Soc'y of the N.Y. City Police Dep't v. N.Y. City Police Dep't*, 806 F.2d 1147, 1152 (2d Cir. 1986). There is, however, an exception to this rule when "the nonparty has an interest that is affected by the trial court's judgment." *Id.* The putative appellant must be able to "identify an 'affected interest.'" *Kaplan v. Rand*, 192 F.3d 60, 67 (2d Cir. 1999), *quoting United States v. Int'l Bhd. of Teamsters*, 931 F.2d 177, 183-84 (2d Cir. 1991); *see WorldCom*, 192 F.3d at 78 (a nonparty need not "prove that it has an interest affected by the judgment," but only "stat[e] a plausible affected interest").

16

In *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, we addressed an analogous challenge to a non-party's standing to appeal. 313 F.3d 70, 81-82 (2d Cir. 2002). In that case, a limited liability company sought to enforce an arbitral award against Pertamina, an oil and gas company owned and controlled by the Republic of Indonesia. *Id.* at 75. Pertamina was deemed an "agency or instrumentality" of Indonesia for purposes of the Act. *Id.* at 75-76. The Republic of Indonesia was not named as a party. *Id.* at 81. On appeal, we acknowledged that in general, a party's absence from the initial proceedings and its failure to intervene would preclude its participation in the appeal. *Id.* However, we held that because the Republic of Indonesia had alleged that it "owns the property encompassed by the garnishment order . . . this constitutes an 'affected interest,' which entitle[d] the [Republic of Indonesia] to join this appeal." *Id.* at 82.

In the case before us, the Administration clearly has an interest that is affected by the district court's orders. The Orders attach and execute upon funds that, on implementation of the December 2008 Argentine law, are administered by the Administration. The position of the

17

Administration is analogous to that of the non-party Republic of Indonesia in *Karaha Bodas*, except that, in *Karaha Bodas*, the agency was named as a party but the parent republic was not, whereas in this case the Republic was named as a party and the Administration was omitted. If anything, the appropriateness of the Administration's standing to appeal is even stronger in this case than in *Karaha Bodas*, because it is the Administration's property at stake. The Administration, as the entity that manages the funds, has an even more direct interest in the property deemed subject to attachment and execution than the Republic of Indonesia had in *Karaha Bodas*.

GMO argues that where a proposed appellant had an opportunity to intervene but failed to do so before the district court, the nonparty does not have standing to appeal, even if it has an interest affected by the district court's judgment. Relying on a Supreme Court case, *Marino v. Ortiz*, 484 U.S. 301 (1988), GMO argues that, for policy reasons, the Administration should not reap the benefit of being allowed to make arguments on appeal where it failed to intervene in the district court proceedings. In *Marino*, petitioners, a group of individuals who claimed to have been

adversely affected by a settlement in an employment discrimination case, chose not to intervene in the district court proceedings. *Id.* at 303. Instead, the petitioners filed their action during the time between the district court's interim approval of a settlement and its issuance of a final consent decree. *Id.* The district court dismissed the petitioners' action, and the court of appeals upheld the dismissal, holding that it constituted an impermissible collateral attack on a consent decree by persons who could have intervened in the action but chose not to. *Id.* at 303-04. The issue in that case was whether the district court may dismiss an impermissible collateral attack by non-parties. *Id.* at 304. The Court affirmed the district court's disallowance of the action by the petitioners. *Id.* (stating "[w]e think the better practice [than to allow a nonparty to appeal in an action like *Marino*] is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable").

The Administration's interest in this litigation is qualitatively different from the *Marino* petitioners' interest. The plaintiffs in this case are attempting to execute upon the property of the Administration. The

19

plaintiffs chose not to make the Administration a party to the action, even though the Administration's interest is directly affected. Unlike the petitioners in *Marino*, who claimed a tangential harm from a settlement but chose not to intervene, it is difficult to imagine a situation where the property of a party will be more affected by the court's decision than the property of the Administration here. *Cf. Hispanic Soc'y*, 806 F.2d at 1152 (dismissing non-party appellant's appeal because the putative appellants had no affected interest in the employment discrimination litigation as they had no right to promotion and did not allege any discrimination against themselves). Further, in *Marino*, the district court had dismissed the petitioners' action. In this case, the district court permitted the Administration to participate in the district court proceedings as a non-party. *Marino* does not govern this case.

GMO also argues that the interest of the Administration is fully and amply protected by the Republic's arguments on appeal. GMO does not offer persuasive support for this argument. Instead, GMO cites Federal Rule of Civil Procedure 24, which governs the rules of intervention. The

20

Administration did not seek to intervene in the district court proceedings, so Rule 24 does not apply to this case.

We therefore hold that the Administration has standing to appeal the district court's orders as a nonparty appellant.

## III

GMO also argues that the district court erred in allowing the Administration to submit memoranda and declarations, and to offer argument in the district court proceedings in opposition to the Orders, because the Administration invoked sovereign immunity during the discovery process. To the extent GMO raises an evidentiary challenge, GMO does not point to any evidence that it believes should have been stricken from the record; therefore, there is no evidentiary ruling for us to consider on appeal. Further, insofar as GMO challenges the district court's decision to allow the Administration to submit memoranda of points of law regarding the Orders, we have stated that it is "essential for the district court to afford the parties the opportunity to present evidentiary material . . . on the question of FSIA jurisdiction. The district court should afford broad latitude to both sides in

21

this regard." *Reiss v. Société Centrale du Groupe des Assurances Nationales*, 235 F.3d 738, 748 (2d Cir. 2000). Although this statement is not directly controlling because the Administration was not a party to the case, it supports the idea that a district court is afforded broad discretion in its determination of jurisdictional issues. The district court acted well within its discretion to consider arguments presented by the Administration to secure a full understanding of the jurisdictional issues.

**IV**

We next turn to the primary issue on appeal: whether the funds administered by the Administration are subject to attachment. We review *de novo* legal conclusions denying Act immunity to a foreign state or its property. *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 79 (2d Cir. 2008). We review the district court's ruling on a request for an order of attachment for abuse of discretion. *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007). The district court abuses its discretion if it applies legal standards incorrectly, relies on clearly

22

erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law. *Id.*

Under section 1609 of the Act, property in the United States of a foreign state is immune from attachment or execution unless the property fits within one of the limited exceptions enumerated in sections 1610 or 1611 of the Act. 28 U.S.C. § 1609. The provisions of section 1611 are not applicable to this case. *See* 28 U.S.C. § 1611. We therefore focus on section 1610(a), which authorizes execution against property of a foreign state located in the United States only if the property is "used for a commercial activity in the United States," even if the foreign sovereign has waived its immunity. 28 U.S.C. § 1610(a); *see also EM Ltd.*, 473 F.3d at 481 n.19 ("[I]f a foreign sovereign waives its immunity from execution, U.S. courts may execute against 'property in the United States . . . used for a commercial activity in the United States.'" (quoting *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002))).

Thus, the property that is subject to attachment and execution must be "property in the United States of a foreign state" *and* must have been "used for a commercial

23

activity" *at the time* the writ of attachment or execution is issued. "Even when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against property that meets these two statutory criteria." *Conn. Bank*, 309 F.3d at 247. This clearly follows from the plain language of section 1610(a). Section 1610(a) does not say that the property in the United States of a foreign state that "*will* be used" or "*could potentially* be used" for a commercial activity in the United States is not immune from attachment or execution. More is required: the property in the United States of a foreign state must be used for a commercial activity in the United States "upon a judgment entered by a court of the United States or of a State." 28 U.S.C. § 1610(a). "To conclude otherwise would render meaningless the provisions of §§ 1610(a) & (d), which subject to attachment property of a foreign state when the property is 'used for a commercial activity' *and* when the foreign state 'has waived its immunity from attachment.'" *EM Ltd.*, 473 F.3d at 481 n.19; *cf. FG Hemisphere Assocs., LLC v. République du Congo*, 455 F.3d 575, 594 (5th Cir. 2006) (holding that "[p]rior to issuing a garnishment order, a district court must make factual findings that support

24

application of the § 1610(a) exception to executional immunity," and therefore, the court must determine the location of each form of property at time of issuance of the order to ensure that it governs property located in the United States).

On appeal, the parties focus largely on whether the Administration qualifies as an "agency or instrumentality" of the Republic under section 1610(b) of the Act. However, even if the Administration is not a separate "agency or instrumentality" for purposes of the Act, but instead is a political subdivision of the Republic, we must first determine whether the funds were being used for a commercial activity in the United States as of the effective date of the Argentine legislation transferring the funds to the control of the Administration. If not, the funds are not subject to attachment or execution, regardless of the Administration's independent juridical status or lack thereof.

The district court issued its opinion two days after the Republic adopted the legislation authorizing the retirement and pension funds to be transferred to the

25

Administration.  The order attaching the assets of the Administration was effective immediately upon the transfer.

The Act is clear: "The property in the United States *of a foreign state*" must be "used for a commercial activity *in the United States*" before it is susceptible to attachment and execution.  28 U.S.C. § 1610(a) (emphasis added).  The commercial activities of the private corporations who managed these assets are irrelevant to this inquiry.  The plaintiffs do not argue that the private corporations were acting as the alter ego of the Republic.  Therefore, before the retirement and pension funds at issue could be subject to attachment, the funds *in the hands of the Republic* must have been "used for a commercial activity."  Because the order attaching the assets of the Administration became effective immediately upon the passage of legislation transferring the assets from the private corporations to the Administration, neither the Administration nor the Republic had the opportunity to use the funds for any commercial activity whatsoever.  The only activity that the Republic had engaged in with regard to the funds at the time that the district court confirmed the Orders was the adoption of a law transferring legal control of the funds from the private

26

corporations to the Administration.  As we read "used for a commercial activity," we hold that a sovereign's mere transfer to a governmental entity of legal control over an asset does not qualify the property as being "used for a commercial activity."  A contrary conclusion would essentially nullify the Act's commercial activity requirement in cases involving attachment and execution of a foreign state's property.

Thus, we conclude that the district court abused its discretion in issuing the Orders.  The Republic had not used the funds for any commercial activity at the time of attachment.  Under the plain language of 28 U.S.C. § 1610(a), the funds are immune from attachment.

**V**

On appeal, the Administration argues that it is an "agency or instrumentality" separate from the Republic, and therefore, its interest in the funds is not subject to attachment or execution because the Administration has not waived its sovereign immunity.  The district court held that the Administration is not a separate "agency or instrumentality," but rather, it is a political subdivision of the Republic.  We need not reach this issue, as we have

27

determined that neither the Administration nor the Republic used the funds for a commercial activity in the United States. We therefore need not determine whether the Administration is a juridically independent "agency or instrumentality" separate from the Republic for purposes of the Act.

The Republic and the Administration also argued that the funds at issue are expressly designated by Argentine law as social security assets, and therefore, their investment (and concomitant payment to Argentine pensioners) is a quintessentially governmental activity, and not a commercial activity under the Act. *See* 28 U.S.C. § 1610(a) and (b). Again, we need not reach this issue, as we have determined that neither the Administration nor the Republic used the funds for a commercial activity in the United States for the same reason as stated above: the accounts were attached as soon as the Administration gained legal title to them. Even assuming (without deciding) that there may have been commercial activity prior to that time in the form of investment of the assets, it is undisputed that such activity was undertaken by private corporations, on behalf of pensioners, not by the Republic or the Administration.

28

Also, because we hold that the retirement and pension funds are not property subject to attachment and execution under the Act, we need not address the propriety of the district court's issuance of the restraining orders prior to the passage of the legislation transferring the funds, when the funds were still the property of the private corporations.

## CONCLUSION

We understand the frustration of the plaintiffs who are attempting to recover on judgments they have secured. Nevertheless, we must respect the Act's strict limitations on attaching and executing upon assets of a foreign state.

For the foregoing reasons, we reverse the district court's judgment and vacate all of the associated orders, as well as its opinion confirming those orders.