23-1158-cv
*Doe v. Deposit Guarantee Fund*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of March, two thousand twenty-five.

PRESENT:
> AMALYA L. KEARSE,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges.*

---

JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7,

> *Plaintiffs-Appellants*,

v.                                                          23-1158-cv

THE DEPOSIT GUARANTEE FUND,

> *Intervenor-Defendant-Appellee*,

THE TALIBAN, AL-QAEDA, THE HAQQANI NETWORK,

> *Defendants*,

THE BANK OF NEW YORK MELLON,

> *Garnishee.*

---

FOR PLAINTIFFS-APPELLANTS: JOHN THORNTON (Orlando do Campo, *on the brief*), do Campo & Thornton, P.A., Miami, Florida.

FOR INTERVENOR-DEFENDANT-APPELLEE: DENNIS H. TRACEY, III (Matthew A. Ducharme and Peter W. Bautz, *on the brief*), Hogan Lovells US LLP, New York, New York.

Appeal from the order of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's order, entered on July 12, 2023, is **AFFIRMED**.

Plaintiffs-Appellants John Does 1–7, who are United States citizens and victims of a 2016 Taliban attack in Afghanistan, obtained a default judgment in November 2020, in the United States District Court for the Northern District of Texas, against several defendants—namely, the Taliban, Al-Qaeda, and the Haqqani Network—in connection with claims arising from that attack. Plaintiffs then filed the instant action in September 2022, pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (Nov. 26, 2002) (codified at 28 U.S.C. § 1610 note), seeking to attach funds in a bank account held in New York in the name of Prominvestbank ("PIB"), which plaintiffs alleged was an agency or instrumentality of the Taliban whose assets had been blocked by Executive Order 14024. More specifically, plaintiffs alleged that PIB, a subsidiary of the Russian state-owned bank, Vnesheconombank ("VEB"), was an agency or instrumentality of the Taliban because, *inter alia*, Russia used VEB, and by extension PIB, to help the Taliban finance and fund some of its terrorist activities. Magistrate Judge Thérèse Wiley Dancks initially granted a writ of execution, in an *ex parte* order filed on November 2, 2022, thereby attaching the funds in the bank account at issue.

2

However, a Ukrainian governmental entity called the Deposit Guarantee Fund ("DGF") subsequently filed a motion to intervene, in which it sought to vacate the writ of execution because Ukraine had nationalized PIB through various governmental actions in May and September 2022, and thus, VEB no longer had an ownership interest in PIB at the time plaintiffs sought the writ of execution. On July 12, 2023, Judge David N. Hurd granted DGF's motion to intervene and vacated the writ of execution based on the fact that Ukraine nationalized PIB. *See Does 1 Through 7 v. The Taliban*, No. 22-cv-990, 2023 WL 4532763, at *7 (N.D.N.Y. July 12, 2023) ("*Does v. Taliban*"). Plaintiffs timely appealed that order to this Court, and while their appeal was pending, the United States Department of Treasury ("Treasury Department") removed PIB from the list of blocked entities under Executive Order 14024. Accordingly, we need not address the district court's grounds for vacating the writ because we hold that, given that the bank account at issue here is no longer a "blocked asset" for purposes of TRIA, plaintiffs cannot use PIB's assets to satisfy their judgment against the Taliban. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm on this ground.

## BACKGROUND

In November 2020, plaintiffs obtained a default judgment in the United States District Court for the Northern District of Texas in the amount of $138,418,741 against the Taliban, Al-Qaeda, and the Haqqani Network, jointly and severally, in connection with their alleged involvement in a 2016 Taliban attack in Afghanistan. On September 20, 2022, plaintiffs initiated the instant action in the Northern District of New York by registering the default judgment with the district court and, on that same date, filing an *ex parte* emergency motion for a writ of execution or, in the alternative,

3

for a writ of attachment. The motion sought, pursuant to Section 201(a) of TRIA, to execute the default judgment against PIB's assets, held in an account that, in 2014, was restricted by the Office of Foreign Assets Control ("OFAC") pursuant to Executive Order 13662, 79 Fed. Reg. 16169, 16169–71 (March 20, 2014), and, in 2021, blocked by OFAC, pursuant to Executive Order 14024, 86 Fed. Reg. 20249, 20249–50 (Apr. 15, 2021).[1] The requested writ sought to execute on (or, in the alternative, attach the default judgment to) a blocked deposit account held at the Bank of New York Mellon ("BNYM") in Oriskany, New York, for the over $40 million held and actively maintained in that deposit account by PIB, which, at the time of the block, was "a Russian bank headquartered in Kyiv, Ukraine." Dist. Ct. Dkt. No. 26, at 1–2 ¶¶ 2, 3. In November 2022, Magistrate Judge Dancks granted the writ of execution. In doing so, Magistrate Judge Dancks found that: (1) PIB was an agency or instrumentality of the Taliban; (2) the blocked assets are held at BNYM; and (3) the blocked assets are subject to attachment to satisfy the Does' judgment pursuant to TRIA and 18 U.S.C. § 2333(e). In December 2022, DGF appeared in this matter and

---

[1] In April 2021, President Joseph R. Biden, Jr. invoked, *inter alia*, the International Emergency Economic Powers Act ("IEEPA") to issue Executive Order 14024. *See* 86 Fed. Reg. 20249 (Apr. 15, 2021). As relevant here, that order blocked "[a]ll property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of . . . any person determined by the Secretary of Treasury" to have specified links to the Russian government or to play specified roles in the Russian economy. *Id.* at 20249–50. The order further authorized the Treasury Department "to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, as may be necessary to carry out the purposes of this order." *Id.* at 20252. In February 2022, the Treasury Department invoked its powers under this order to block the assets of VEB, which the Treasury Department identified as a Russian "state-owned institution[] that play[s] specific roles to prop up Russia's defense capability and its economy." Press Release, U.S. Dep't of the Treasury, *U.S. Treasury Imposes Immediate Economic Costs in Response to Actions in the Donetsk and Luhansk Regions* (Feb. 22, 2022), https://home.treasury.gov/news/press-releases/jy0602. Simultaneously, the Treasury Department invoked the same executive order to block the assets (subject to U.S. jurisdiction) of "25 of VEB's subsidiaries," including PIB, which the Treasury Department identified as "a bank located in Ukraine." *Id.*

4

moved to intervene to seek an order vacating the writ of execution because, *inter alia*, the seizure and nationalization of PIB by Ukraine prior to plaintiffs' filing for the writ of execution meant that PIB was no longer an instrumentality of the Taliban, even assuming *arguendo* it was previously an instrumentality. On July 12, 2023, the district court granted DGF's motion to intervene and vacated the writ of execution based on the Ukrainian government's nationalization of PIB following the Russian invasion of Ukraine in spring 2022. *See Does v. Taliban*, 2023 WL 4532763, at *7 (explaining that Ukraine's official government records reflect that, "by the time [plaintiffs] applied for the Writ of Execution on September 20, 2022, VEB had no control over or access to Prominvestbank's assets, and Ukrainian law no longer recognized VEB as having any ownership interest in Prominvestbank"). Plaintiffs appealed, arguing, *inter alia*, that Ukraine's nationalization of PIB was not a ground for vacating the writ.

In April 2024, after this appeal was fully briefed, Congress passed the Rebuilding Economic Prosperity and Opportunity for Ukrainians Act ("REPO Act"). The REPO Act states that, subject to certain exceptions, Russian "sovereign asset[s]" that are "blocked or effectively immobilized" as of the day before the statute's enactment cannot be "released or mobilized" until the President certifies that various events have taken place. REPO Act, Pub. L. No. 118-50, § 103(a), 138 Stat. 895, 946 (Apr. 24, 2024). The parties differed in their views as to whether the REPO Act affected plaintiffs' ability to execute their default judgment against PIB's assets. This Court heard oral argument on May 15, 2024, and then invited the United States government to state its views on the issues on appeal, including on any impact the REPO Act's enactment may have had on the instant case. While the government's response was pending, the Treasury Department removed PIB from the list of entities blocked under Executive Order 14024 on September 30, 2024. *See* Treasury

5

Department, Office of Foreign Assets Control, *Russia-related Designation Removals; Issuance of Russia-related General License; Russia- /Ukraine-related Identification Update,* https://ofac.treasury.gov/recent-actions/20240930 (Sept. 30, 2024). In response to this Court's inquiry, the Department of Justice ("DOJ") stated that the Treasury Department concluded that it was no longer accurate to describe PIB as a VEB subsidiary, which had been the original basis for PIB's 2022 designation as a blocked entity. *See* DOJ October 7, 2024 Letter, at 6; Attachment to the DOJ October 17, 2024 Letter. The assets at issue in this action were thus unblocked. Moreover, on October 17, 2024, the Treasury Department issued an Amended Unblocking Order further clarifying that "[the] unblocking includes all property and interests in property of [PIB] with respect to any civil proceeding commenced or pending pursuant to Section 201 of [TRIA], regardless of whether such proceeding was commenced or pending prior to the date of the September 30, 2024 Unblocking Order or this Amended Unblocking Order." Attachment to the DOJ October 17, 2024 Letter. Finally, on October 30, 2024, the Treasury Department removed PIB from its list of entities subject to Executive Order 13662's debt-and-equity restrictions by removing the bank from the Sectoral Sanctions Identifications List.

Based upon these recent legal developments, the government argues in its submissions to this Court that we should not address the legal issues raised by the district court's decision and, instead, should affirm for the simple reason that the PIB account can no longer be attached under TRIA because the assets in question are no longer blocked assets. DGF agrees with the government, but also continues to assert other grounds for affirmance. Plaintiffs counter by arguing, *inter alia*, that the delisting and unblocking of PIB's assets does not defeat their "pending TRIA execution." Plaintiffs' October 8, 2024 Letter, at 1.

**DISCUSSION**

This Court "review[s] a district court's ruling on a request for an order of attachment for abuse of discretion." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007). "The district court abuses its discretion if it applies legal standards incorrectly, relies on clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *Aurelius Cap. Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009); *see also Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013) (questions of law are reviewed *de novo*).

"We may, of course, affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citation omitted). Here, although the district court vacated the writ of execution based upon the nationalization of PIB by the Ukrainian government, we affirm the district court's decision on the separate ground that the bank account at issue is no longer a blocked asset for purposes of TRIA, and thus, TRIA is unavailable as a basis on which to execute a default judgment against the assets in that account.

TRIA allows for judgment creditors to execute their default judgments against blocked assets of instrumentalities of terrorist parties. In particular, Section 201(a) of TRIA provides:

> Notwithstanding any other provision of law, ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

7

TRIA § 201(a). Thus, to attach property pursuant to TRIA, a party must show, among other things, that the property at issue is a blocked asset. *See, e.g.*, *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 180 (2d Cir. 2019).

As set forth in TRIA, the term "blocked asset" is defined as "any asset seized or frozen by the United States under . . . [*inter alia*] sections 202 and 203 of the International Emergency Economic Powers Act." TRIA § 201(d)(2)(A) (codified at 15 U.S.C. § 1610 note). Here, prior to the Treasury Department's delisting of PIB's assets, those assets met the statutory definition of "blocked asset" because PIB was designated under Executive Order 14024, which is an IEEPA-based executive order that blocked all transactions in PIB's assets. However, given the removal of PIB from the list of entities blocked under Executive Order 14024, the PIB assets at issue no longer qualify as "blocked assets" under the plain language of the statutory definition. *See, e.g.*, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) ("Because the plain language of [the statute] is unambiguous, our inquiry begins with the statutory text, and ends there as well." (internal quotation marks and citation omitted)). Consequently, TRIA does not authorize plaintiffs to execute upon PIB's assets to satisfy their judgment against the Taliban.

Plaintiffs argue that the Treasury Department's removal of PIB from the list of blocked entities did not extinguish their ability to execute upon PIB's assets because "once a TRIA writ attaches to blocked assets, no Executive action can defeat the execution." Plaintiffs' October 8, 2024 Letter, at 2 (emphasis omitted). We disagree that these assets are still available to plaintiffs. We note that, at the time of the delisting and unblocking of PIB's assets in September 2024, plaintiffs had not obtained the funds that were the subject of the writ of execution. They also did not have a pending writ of execution because, by then, the district court had already vacated it, and

8

plaintiffs did not seek or obtain a stay of that order.  *See Pach v. Gilbert*, 124 N.Y. 612, 618 (1891) ("When the warrant of attachment was vacated and the levy thereunder released, the situation of the property was, for the time being, the same as if there had never been a warrant of attachment issued . . . .").[2]

Plaintiffs nevertheless argue that the Treasury Department's action did not extinguish their ability to execute upon PIB's assets because they had "invoked standard judicial processes" as a terrorist judgment creditor and had served defendants with notice of the now-vacated writ. Plaintiffs' October 8, 2024 Letter, at 3.  However, that argument is not only inconsistent with the plain text of TRIA, but it is also foreclosed by our precedent.  In *Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York*, we explained that "the language of section 201 cannot reasonably be read to mandate that terrorist assets be blocked in perpetuity . . . .  Neither does it guarantee that any blocked assets will in fact be available when a particular victim seeks to execute on a judgment."  346 F.3d 264, 270–72 (2d Cir. 2003).  We further emphasized that "nothing in the statutory language evinces Congressional intent to divest the President of authority to confiscate terrorist assets as provided in IEEPA § 1702(a)(1)(C)," *id*. at 271, and noted that TRIA places no "constraint on the [Executive's] discretionary power to unblock assets—and thereby to remove them from the ambit of TRIA § 201," *id*. at 270 n.5; *see also id*. at 271 ("As we have already explained, section 201 operates to empower a plaintiff with a 'judgment' against a 'terrorist party' to execute against any 'blocked assets' of that party.  It imposes no obligation on the President to

---

[2]  We have held that, when TRIA is silent as to an issue regarding attachment, we should look to the law of the forum state for guidance regarding attachment.  *See Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014).

maintain such funds for future attachment." (internal citation omitted)). Thus, we held that "[b]ecause Plaintiffs cannot establish that section 201 of TRIA segregated the Assets specifically for their use or that the President's confiscation of the Assets was unlawful, their claim must fail." *Id.* at 272. Here, as in *Smith*, because the discretionary decision by the Executive Branch to unblock PIB's assets rendered such assets unavailable for TRIA purposes, plaintiffs' claim under Section 201(a) fails as a matter of law.[3]

We find equally unpersuasive plaintiffs' argument that 31 C.F.R. § 587.402 "leaves no doubt that subsequent executive action does not affect ongoing TRIA proceedings."[4] Plaintiffs' October 8, 2024 Letter, at 3 (emphasis omitted). As noted *supra*, on October 17, 2024, the Treasury Department issued an Amended Unblocking Order, which provides in relevant part:

> For the avoidance of doubt, this Amended Delisting and Unblocking Memorandum ("Amended Unblocking Order") specifically provides further that, notwithstanding any effect that 31 C.F.R § 587.402 might otherwise have, this unblocking includes

---

[3] Indeed, in initially arguing that the district court erred in vacating the writ of execution based on the nationalization of PIB by Ukraine, plaintiffs acknowledged that the political branches had the ability to remove the blocked assets in this case from TRIA execution. *See* Appellants' Reply Br. at 20–21 (acknowledging that TRIA "provides built-in mechanisms for the political branches to recognize and remove blocked assets from TRIA execution," and arguing that because the Executive Branch had not—at the time plaintiffs filed their reply brief—delisted PIB, the courts should not take it upon themselves to determine "whether circumstances concerning a blocked entity . . . have changed sufficiently to merit removing the blocked assets from TRIA execution").

[4] The regulation provides:

> *Unless otherwise specifically provided*, any amendment, modification, or revocation of any provision in or appendix to this part or chapter or of any order, regulation, ruling, instruction, or license issued by OFAC does not affect any act done or omitted, or any civil or criminal proceeding commenced or pending, prior to such amendment, modification, or revocation. All penalties, forfeitures, and liabilities under any such order, regulation, ruling, instruction, or license continue and may be enforced as if such amendment, modification, or revocation had not been made.

31 C.F.R. § 587.402 (emphasis added).

10

all property and interests in property of the person identified above with respect to any civil proceeding commenced or pending pursuant to Section 201 of the Terrorism Risk Insurance Act (TRIA), 28 U.S.C. § 1610 note, regardless of whether such proceeding was commenced or pending prior to the date of the September 30, 2024 Unblocking Order or this Amended Unblocking Order. Although the Office of Foreign Assets Control does not interpret 31 C.F.R. § 587.402 to restrict the effect of unblocking with regard to actions under TRIA's Section 201, this Amended Order provides additional clarification, consistent with the intent of the September 30, 2024 Unblocking Order.

Attachment to DOJ's October 17, 2024 Letter. 31 C.F.R. § 587.402 clearly states that an unblocking order can apply to assets at issue in previously commenced or pending civil proceedings if the Treasury Department "specifically provide[s]" for that effect. 31 C.F.R. § 587.402. Thus, even assuming *arguendo* that 31 C.F.R. § 587.402 could be read in the manner that plaintiffs suggest, the Treasury Department has "specifically provided" that its unblocking of PIB's assets include assets that are the subject of pending TRIA lawsuits, such as this one, and the regulation does not provide any support for plaintiffs' Section 201(a) claim in this instance. *Id.*

*   *   *

We have reviewed plaintiffs' remaining arguments regarding the effect of the unblocking of PIB's assets and find them to be without merit. Accordingly, we **AFFIRM** the district court's order on the ground that the bank account at issue is no longer a "blocked asset" for purposes of TRIA.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court