(18 Misc. Rep. 297.)

### EDDY v. FARMERS' MUT. INS. CO. OF ORLEANS & NIAGARA COUNTIES.

(Supreme Court, Trial Term, Orleans County.   October 2, 1896.)

1. **MUTUAL FIRE INSURANCE—LIMITATION OF PLACE.**
   There is no limitation of place in a clause of an insurance policy reading, "$500 on stallion four years old," written on blank lines left for such purpose, under a by-law of the company that "fancy stock shall be especially designated, and a valuation placed on each when insured," though the preceding printed clause, covering other stock, has the limitation, "On live stock in and near said barns [specified] against fire."

2. **SAME—EXTERRITORIAL INDEMNITY.**
   Laws 1892, c. 690 (Insurance Law) § 278, providing that no co-operative insurance company shall transact business in more than three counties, does not prohibit the insurance of property, owned and ordinarily kept in one of such counties, against loss occurring while the property is temporarily in another county, in ordinary use by the owner.

3. **SAME—ORDINARY USE OF INSURED PROPERTY.**
   It is "ordinary use," within the meaning of such a policy, to train for speed a stallion of fancy stock at a driving park.

Action by Charles I. Eddy against the Farmers' Mutual Insurance Company of Orleans & Niagara Counties on a fire insurance policy. Judgment for plaintiff.

S. E. Filkins, for plaintiff.
David V. Millar, for defendant.

LAUGHLIN, J.   The material facts in this case are admitted by the pleadings, or were shown by uncontroverted evidence, and they present a novel question of fire insurance law.   On the 17th day of December, 1892, the defendant issued a policy of insurance to one Charles F. Williams, then residing on a farm owned by him in the town of Royalton in the county of Niagara, in and by which it insured his property against loss or damage by fire or lightning to the amount of $4,800 for the period of five years.   The policy is known as "No. 6,091."   The property thus insured is, on the face of the policy, divided into 10 items or classifications, the amount of the insurance on each item being specified separately.   The last of these items is, "$500 on stallion four years old, Red Gothard." This stallion was destroyed by fire on the Buffalo Driving Park, in the county of Erie, April 4, 1896.   Williams' claim for this insurance of $500 was assigned to the plaintiff, who brings this action to recover the same. The defendant, as its name implies, is a farmers' mutual fire insurance company.   It is conceded that it was reorganized under article 9 of chapter 690 of the Laws of 1892, known as the "Insurance Law," and was governed by the provisions of that law as far as the questions presented in this litigation are concerned.

It is contended on the part of the defendant that it was only authorized to do business in Niagara and Orleans counties, to which its certificate of incorporation relates.   It is urged that the company had no authority to insure animals against loss by fire occurring outside of the territorial limit of Niagara and Orleans counties,

and that the policy issued by it should not be so construed as to render it liable for insurance that its officers were not authorized to write. The defendant rests its claim upon section 278 of the insurance law, which reads as follows:

"No corporation formed under the provisions of this article or any such corporation formed under any similar act repealed by this chapter, shall transact business in more than three counties, which shall be designated in the certificate of incorporation. Any such corporation organized and doing business under the provisions of any act repealed by this chapter, or which may be hereafter organized and do business under the provisions of this article, in one county or two adjoining counties, may extend its business into any number of counties, not exceeding three in all, by filing in the office of the clerk of such adjoining county or counties a duly certified copy of the certificate and statement filed in the office of the secretary of state under the provisions of section 263, and filing in the office of secretary of state and of the county clerk of each county comprised in its territorial limits, a certificate signed by at least two-thirds of its directors, stating the counties in which such corporation proposes to do business; and upon filing such certificates and certified copies as herein provided, any such corporation shall possess all the business and corporate powers, rights and privileges in the counties named in such certificate not exceeding three, and be subject to the same liabilities, as if originally organized under a certificate specifying the same counties as the territorial limits of such corporation."

It appears that, while the agent of the defendant was writing Williams' application for this insurance, the latter informed him that the stallion had been trained as a trotter, had been in training at the Lockport track, and that he expected to send the stallion to the covered track at Buffalo the following spring and summer for further training. This information seems to have been communicated to the insurance agent casually, however, and not by way of inquiry as to whether the policy would protect the owner against loss occurring elsewhere than at home, and no assurance in that respect was given by such agent. The owner did not take the horse to the Buffalo covered track in the spring or summer of 1893, but in March, 1896, he sent the horse there to be trained for speed for the period of four weeks, during which time the trainer was authorized to sell the animal for $1,500, and, in such event, was to have 10 per cent, thereof for his commission. After the stallion had been thus in the keeping of the trainer at the Buffalo Driving Park for three weeks, all of the buildings on the park in which the horses were kept were burned, with their contents. It was the intention of the owner to return him to the farm in Niagara county after the expiration of the four weeks. The evidence shows that good trotting qualities enhance the value of a stallion, and that Red Gothard had trotted one-eighth of a mile at the rate of a mile in 2 minutes and 16 seconds, and was worth $1,500.

The policy shows $300 insurance on a colt named "Golden Chimes," which was another blooded animal. The insurance on Red Gothard and Golden Chimes is written in the policy, on blank lines left for such purpose. Immediately above these lines of insurance is an item of $400 insurance, printed on the policy, as follows:

"On live stock in and near said barns (on the farm) against fire, and elsewhere in Orleans and Niagara counties against lightning."

Section 9 of the by-laws of the company, printed on the policy, and made a part thereof, reads as follows:

"Live stock insured by this company is covered if killed or damaged by lightning anywhere in Orleans or Niagara counties. The market value of said stock for ordinary farming purposes shall be the basis of appraisal. Fancy stock shall be especially designated, and a valuation placed upon each when insured."

Golden Chimes and Red Gothard were undoubtedly specially designated, and a valuation placed upon each, in compliance with the by-law just quoted; and it is claimed by the defendant, for that reason, that the limitation, "in and near said barns against fire," upon other live stock, attaches to them. I am of the opinion that this position is untenable, and that there is no limitation on the face of the policy of the insurance on Red Gothard as to place. The insurance company undoubtedly had a right to restrict its liability as to the place of the destruction of the property by fire or lightning, but in this case there seems to be no express restriction in that respect. By the certificate which the incorporators of this company were required to file, the law provided that the names of the counties in which they proposed to do business should be specified, and, accordingly, Niagara and Orleans counties are designated. Section 263. Pursuant to another provision of law requiring that the corporate name shall embrace the names of the counties in which its office is located, and where it contemplates doing business, the names of Orleans and Niagara counties are made part of the corporate name of the defendant. Sections 261, 278. Section 266 of the insurance law authorizes such companies to insure against fire or lightning dwelling houses, barns, and their contents, and other buildings not more hazardous, without limitation as to their location, "and live stock owned on the premises." It will be seen, therefore, that the only restriction upon such companies, with reference to the place of the property insured, is section 261, which we have quoted. A careful examination of all of these provisions renders the legislative intent quite clear.

The company was not authorized to write policies of insurance on farm buildings and live stock owned on farms outside of the counties of Niagara and Orleans, but the legislature of the state contemplated that this company would furnish adequate insurance to farmers residing in those two counties against the destruction of their property by fire. If unlimited as to the place of the destruction of the property by fire, the indemnity would follow the property, even into other counties, if the nature and character of the property insured was such that, in the ordinary or reasonable use thereof by the owner, it would at times be beyond the territorial limits of Niagara and Orleans counties. In the absence of special restriction, clothed in clear and unequivocal language, as to the territory within which the property was to be insured, it will be deemed to have been within the contemplation of the parties that the property might be used in the ordinary way, and, considering the nature of the property, that the insurance would continue to

attach, wherever the same might be, while the owner is using his property in the ordinary manner, and for the purposes for which such property is ordinarily held and used. Wood, Ins. (2d Ed.) § 47; Noyes v. Insurance Co., 64 Wis. 415, 25 N. W. 419; Longueville v. Western Assur. Co., 51 Iowa, 553, 2 N. W. 394; Mills v. Insurance Co., 37 Iowa, 400; Peterson v. Insurance Co., 24 Iowa, 494; Holbrook v. Insurance Co., 25 Minn. 229. The counties in the western end of the state, at least, are not separated from one another by any impassable barriers. Highways lead from one county into another at frequent intervals of space. It is a common thing for farmers residing in one county to market their products and purchase their supplies at a village or city in another. An insurance policy which insures their horses and vehicles to a county line only cannot be said to afford the farmers adequate insurance upon that class of property. In driving across the county line upon business or pleasure, they are using their horses and vehicles in the ordinary and customary manner, and, in the absence of a special restriction, the insurance continues to protect them against loss by fire while on such journeys, as well as within the county of their residence.

Red Gothard was insured specially, pursuant to a by-law relating to fancy stock. It was known by the insurance company that he was a valuable stallion, and by its agent that he had trotting qualities which the owner purposed to develop by sending him outside of the county to be specially trained upon a track. Trotting horses are not, ordinarily, trained upon farms nor by farmers. Tracks are constructed, at great expense, specially for that purpose, and men experienced in such work make a business of training horses for trotting. Under these circumstances, it was as much within the ordinary use of this animal for the owner to send him to the Buffalo Driving Park to be trained, as for a farmer residing in one county to take a load of grain to market with his team in another. It is not shown, in behalf of the defendant, that the risk was any more hazardous at the Buffalo Driving Park than while the animal was on the plaintiff's farm, and, if any presumption may be indulged in, it is quite likely that the risk would be regarded as less hazardous, from the existence of greater facilities for extinguishing a fire in a large city. The animal, while temporarily absent in Buffalo for the purpose of being trained, continued to be owned upon Williams' farm in Niagara county, where he was to be returned after the expiration of four weeks.

It is unnecessary, in this case, to decide whether, under such circumstances, the permanent removal of such an animal from the counties where the company is authorized to do business, would vitiate the insurance, but in very similar cases in Pennsylvania it has recently been held that the insurance would continue, even after such permanent removal. Association v. Evans, 102 Pa. St. 281; Reck v. Insurance Co., 163 Pa. St. 443, 30 Atl. 205.

I find no precedent in this state upon the precise question under consideration, but, upon principle, I am of the opinion that the

insurance company is liable. The proofs of loss were waived by the defendant's officers announcing to the owner, on the 27th of April, 1896, that the company was not liable, on account of the fact that the loss occurred in Erie county, and that the claim would not be paid.

The plaintiff is entitled to judgment for $500 and interest thereon from April 27, 1896, together with costs.