10-806-cv
Walters v. Indus. & Commercial Bank of China, Ltd.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: December 1, 2010     Decided: July 7, 2011)

Docket No. 10-806-cv

DEBBIE WALTERS, MAX WALTERS,

*Plaintiffs-Petitioners-Appellants*,

—v.—

INDUSTRIAL AND COMMERCIAL BANK OF CHINA, LTD., BANK OF CHINA LTD.,
CHINA CONSTRUCTION BANK CORPORATION,

*Respondents-Appellees,*

THE PEOPLE'S REPUBLIC OF CHINA,

*Defendant.*[*]

Before:

SACK, RAGGI, LYNCH, *Circuit Judges*.

---

[*] The Clerk of the Court is directed to amend the caption to read as shown above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*), relying on the Foreign Sovereign Immunities Act of 1976 to dismiss, in part with prejudice and in part without prejudice, a petition for a turnover order through which plaintiffs sought to enforce a $10 million default judgment against defendant People's Republic of China by collecting assets held by the respondent banks.

AFFIRMED.

––––––––––––

CHARLES H. CAMP, Law Offices of Charles H. Camp, Washington, D.C., *for* Plaintiffs-Petitioners-Appellants.

LANIER SAPERSTEIN (Pamela Rogers Chepiga, Mitchell A. Silk, *on the brief*), Allen & Overy LLP, New York, New York, *for* Respondents-Appellees.

––––––––––––

REENA RAGGI, *Circuit Judge*:

Debbie and Max Walters appeal from a judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*), entered on April 29, 2010, which dismissed their petition for issuance of a turnover order pursuant to Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. § 5225(b) ("petition"). The Walters sought a turnover order to enforce a $10 million default judgment against the People's Republic of China by collecting China's assets in the possession of the respondent banks, Industrial and Commercial Bank of China, Ltd., Bank of China Ltd., and China Construction Bank Corporation (together, "Banks"). Citing the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. §§ 1330, 1332(a), 1391(f), 1441(d),

2

1602-1611), the district court dismissed the petition. To the extent the petition sought assets beyond the scope of the exception to immunity from execution set forth in 28 U.S.C. § 1610(a)(2), the district court ordered dismissal with prejudice. To the extent the petition sought assets conceivably falling within the scope of § 1610(a)(2), the district court ordered dismissal "without prejudice to the Walters filing a new Petition narrowly tailored to the requirements of § 1610(a)(2)" and "pursuant to § 1610(c)." Order ¶¶ 4-5, Walters v. People's Republic of China, No. 18 Misc. 302 (S.D.N.Y. Feb. 2, 2010).

Without filing a new petition, the Walters appeal, arguing that (1) the Banks lack standing to assert foreign sovereign immunity on behalf of China, which has not itself appeared in this action; (2) China waived sovereign immunity, both (a) by its commercial and tortious conduct underlying the default judgment, and (b) by its failure to appear; (3) the petition satisfies all FSIA requirements, including those of § 1610(a)(2) and § 1610(c); and (4) under the FSIA, petitioners are entitled to collect on the default judgment against China from the assets of China's agencies and instrumentalities, in addition to the assets of China itself.

We reject these arguments as without merit and affirm the judgment of dismissal.

## I.    Background

### A.    The Default Judgment Entered in the Western District of Missouri

This case has its origins in a tragedy. On November 11, 1990, petitioners' thirteen-year-old son, Kale Ryan Walters, was killed on a hunting trip with his father when a Chinese-manufactured rifle the boy was carrying allegedly malfunctioned and discharged. In

3

November 1993, the Walters sued China and entities allegedly controlled by that sovereign in the United States District Court for the Western District of Missouri on theories of products liability, negligence, and breach of warranty in connection with the manufacture and export of the gun in question. See Compl., Walters v. Century Int'l Arms, Inc., No. 93-5118-CV-SW-1 (W.D. Mo. Nov. 4, 1993).

After being served with petitioners' complaint pursuant to 28 U.S.C. § 1608(a)(2)-(4), China returned the documents, claiming sovereign immunity, and thereafter entered no appearance in the Missouri action. The district court nevertheless proceeded to conduct a bench trial and, on October 22, 1996, entered a default judgment against China for $10 million ("Missouri default judgment"). See Final Judgment, Walters v. Century Int'l Arms, Inc., No. 93-5118-CV-SW-1 (W.D. Mo. Oct. 22, 1996). In doing so, the Missouri district court determined that it had jurisdiction over China under FSIA exceptions to sovereign immunity for carrying on commercial activity within the United States, see 28 U.S.C. § 1605(a)(2), and committing a "tortious act or omission" causing damages in this country, id. § 1605(a)(5).[1] The district court dismissed without prejudice petitioners' claims against the single Chinese-controlled corporation then remaining in the case.[2]

Over the next ten years, the Walters unsuccessfully attempted to collect on the

---

[1] These and other provisions of the FSIA relevant to this appeal are discussed in more detail in Part II.B, infra.

[2] In March 1996, petitioners had entered into a settlement with what appears to have been either this corporation or an affiliated entity, releasing all claims against it in exchange for $5,000.

Missouri default judgment. Their 1998 motion in the Western District of Missouri for an order of attachment and execution in the amount of $10 million was denied for failure to identify any property belonging to China falling within one of the FSIA exceptions to execution immunity listed in 28 U.S.C. § 1610(a) or (b). See Order, Walters v. People's Republic of China, No. 93-5118-CV-SW-1 (W.D. Mo. Dec. 18, 1998).[3] The Walters' 2001 effort to execute the judgment upon two Chinese giant pandas on loan to the National Zoo in Washington, D.C., prompted an appearance in opposition by the United States and, in the end, a dismissal on consent with prejudice. See Order, Walters v. People's Republic of China, No. 93-5118-CV-SW-1 (W.D. Mo. Aug. 5, 2002).

In October 2006, with the ten-year-old judgment still unsatisfied, the district court for the Western District of Missouri granted petitioners' request to extend the judgment for another ten years. See Order, Walters v. People's Republic of China, No. 93-5118-CV-SW-DW (W.D. Mo. Oct. 18, 2006); see also 28 U.S.C. § 1962 (providing for federal judgment to operate as lien in same manner and time as state judgment); Mo. S. Ct. R. 74.08-.09 (providing for judgments to expire after ten years, subject to motion for revival).

B.      Proceedings in the Southern District of New York

1.      Restraining Notices and Subpoenas

In 2009, the Walters shifted their enforcement efforts from Missouri to New York. On September 1, 2009, they registered the Missouri default judgment in the United States

---

[3] The difference between sovereign immunity from jurisdiction and sovereign immunity from execution is discussed in Part II.B.1-2, infra.

District Court for the Southern District of New York, and the following month they served restraining notices and subpoenas on the New York branches of the respondent Banks, forbidding the transfer of any of China's assets held by the Banks and demanding documents relating to such assets. See Walters v. People's Republic of China, 672 F. Supp. 2d 573, 574 (S.D.N.Y. 2009). In subsequent filings and at oral argument, petitioners clarified that they sought to restrain only China's assets held outside the United States. See id.

The Banks moved in the district court to vacate the restraining notices and to quash the subpoenas on the ground of China's sovereign immunity. In opposition, petitioners argued that (1) China's property outside the United States was not protected by sovereign immunity under the FSIA, and (2) the Banks lacked standing to assert immunity on behalf of China. See id.

On December 2, 2009, District Judge Sidney H. Stein granted the motion to vacate and quash, holding that the FSIA's exceptions to sovereign immunity did not apply to China's assets outside the United States. See id. at 575. Judge Stein found it unnecessary to decide whether the Banks had standing to assert sovereign immunity on China's behalf, relying instead on China's own assertion of immunity in a November 11, 2009 letter to the U.S. Department of State. See id. at 575 n.2. Therein, China maintained that it "enjoys sovereign immunity" with respect to petitioners' claims, that it had made in this case "repeated representations to the US side through diplomatic channel[s] and stressed that China enjoys sovereign immunity and is not subject to jurisdiction of US courts," and that it "does not accept the jurisdiction of US courts and the so-called default judgment." Letter

6

from Embassy of People's Republic of China to U.S. Dep't of State (Nov. 11, 2009).

Petitioners did not appeal the district court's December 2, 2009 order.

### 2. Turnover Petition

On November 24, 2009, petitioners filed in the district court and served upon the Banks the present petition for issuance of a turnover order pursuant to N.Y. C.P.L.R. § 5225(b).[4] The petition, which was served on China via its Ministry of Justice, sought "all funds of [China] being held within or without the United States by any or all of [the Banks] as is necessary to fully satisfy the [Missouri default] Judgment." Notice of Pet. for Issuance of Turnover Order at 2, Walters v. People's Republic of China, No. 18 Misc. 302 (S.D.N.Y. Nov. 24, 2009). In a December 24, 2009 letter to petitioners' counsel, the Chinese Ministry of Justice rejected service of the petition, stating that "[t]he execution of the request would infringe the sovereignty or security of the People's Republic of China." Letter from Ministry of Justice, People's Republic of China to Charles H. Camp (Dec. 24, 2009).

The Banks moved to dismiss the petition, and then-District Judge Denny Chin granted the motion on February 2, 2010. Insofar as the petition sought turnover of assets (1) held outside the United States or (2) held inside the United States but not falling within the scope of 28 U.S.C. § 1610(a)(2), the district court ordered dismissal with prejudice. To the extent the petition sought turnover of assets inside the United States falling within the scope of

---

[4] Pursuant to Federal Rule of Civil Procedure 69(a), state law supplies the procedures for the enforcement of judgments in federal court, including proceedings to attach or execute upon the assets of foreign sovereigns under the FSIA. See, e.g., EM Ltd. v. Republic of Argentina, 473 F.3d 463, 473 n.10 (2d Cir. 2007).

§ 1610(a)(2), the district court ordered dismissal "without prejudice to the Walters filing a new Petition narrowly tailored to the requirements of § 1610(a)(2)" and "pursuant to § 1610(c)." Order ¶¶ 4-5, Walters v. People's Republic of China, No. 18 Misc. 302 (S.D.N.Y. Feb. 2, 2010). Instead of a new petition, however, the Walters filed this appeal, challenging all aspects of the district court's decision relating to China's assets inside the United States.

## II. Discussion

### A. Standard of Review

We accord deferential review to a district court ruling on a petition for an order of attachment or execution under the FSIA, and we will reverse only for abuse of discretion. See, e.g., Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d 120, 129 (2d Cir. 2009). A district court abuses its discretion "if it applies legal standards incorrectly, relies on clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." Id.

Petitioners submit that such abuse occurred in this case because the district court erred as a matter of law in failing to recognize that (1) sovereign immunity can be asserted only by the foreign state itself and that the Banks, therefore, lack standing to assert China's immunity as a basis for dismissal; (2) China waived its sovereign immunity by both (a) its commercial and tortious conduct underlying the Missouri default judgment and (b) its failure to appear in the Missouri or New York proceedings; (3) no new filing is necessary because the petition already satisfies all FSIA requirements, including those of § 1610(a)(2) and

8

§ 1610(c); and (4) the FSIA authorizes the collection of assets of a state's agencies and instrumentalities, in addition to those of the state itself.

We review a district court's legal conclusions under the FSIA de novo. See Carpenter v. Republic of Chile, 610 F.3d 776, 778 (2d Cir. 2010). This includes determinations that a foreign state or its property is or is not protected by immunity. See, e.g., Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d at 129

B.      Immunity from Jurisdiction and Immunity from Execution Under the FSIA

Our consideration of petitioners' appellate arguments is usefully informed by a preliminary discussion of the two types of foreign sovereign immunity addressed in the FSIA: (1) "[i]mmunity of a foreign state from jurisdiction," 28 U.S.C. § 1604; and (2) "[i]mmunity from attachment and execution of property of a foreign state," id. § 1609. Compare id. §§ 1330, 1604-1607 (discussing immunity from jurisdiction), with id. §§ 1609-1611 (discussing immunity from attachment and execution). Although only immunity from execution is at issue in this suit, its parameters are best understood in comparison to immunity from jurisdiction.[5]

_____

[5] As discussed in detail in Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 486-89 (1983), and Garb v. Republic of Poland, 440 F.3d 579, 585-86 (2d Cir. 2006), the FSIA codifies a "restrictive" view of sovereign immunity first enunciated as United States policy in 1952. See Letter of Jack B. Tate, Acting Legal Adviser, Dep't of State, to Acting Attorney General Philip B. Perlman (May 19, 1952) ("Tate Letter"), reprinted in 26 Dep't of State Bull. 984, 984-85 (1952), and in Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 711-15 (1976). The Tate Letter proposed to recognize sovereign immunity with respect to a state's sovereign or public acts (jure imperii) but not with respect to its private acts (jure gestionis). See Garb v. Republic of Poland, 440 F.3d at 585 (collecting authorities). This marked a departure from the doctrine of absolute sovereign immunity

## 1. Immunity from Jurisdiction

The FSIA invests federal district courts with "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state," but only "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity . . . under sections 1605-1607." 28 U.S.C. § 1330(a). Consistent with this provision, § 1604 states that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607." Among the exceptions to the general rule of jurisdictional immunity relevant to the Walters' pursuit of their claim against China are the following: cases in which the foreign sovereign has waived its immunity, see id. § 1605(a)(1); cases "based upon a commercial activity carried on in the United States by the foreign state," id. § 1605(a)(2); and cases "in which money damages are sought against a foreign state for personal injury or death . . . occurring in the United States and caused by the tortious act or omission of that foreign state," id. § 1605(a)(5).

Although the FSIA's legislative history suggests that jurisdictional immunity is "an affirmative defense which must be specially pleaded" by the foreign sovereign, H.R. Rep. No. 94-1487, at 17 (1976), the Supreme Court has stated that because § 1330(a) "subject matter jurisdiction turns on the existence of an exception to foreign sovereign immunity, . . . even if the foreign state does not enter an appearance to assert an immunity defense, a

---

articulated by Chief Justice Marshall in The Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116, 136-37 (1812) (holding public vessel of foreign state immune from attachment absent consent lest United States "degrade the dignity" of another nation and discourage "mutual intercourse" and "interchange of good offices" among sovereign states).

District Court still must determine that immunity is unavailable under the" FSIA, Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 n.20 (1983). This requirement is consistent with the courts' "independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte." College Standard Magazine v. Student Ass'n of State Univ. of N.Y. at Albany, 610 F.3d 33, 35 (2d Cir. 2010) (internal quotation marks omitted).

Here, the Western District of Missouri relied on both the "commercial activity" and "tortious act" exceptions in § 1605(a)(2) and (5), to hold that China was not immune from jurisdiction on the Walters' claims relating to the death of their son.

### 2. Immunity from Attachment and Execution

A separate section of the FSIA provides certain sovereign property with immunity from attachment and execution. Section 1609 states that "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611."[6] Section 1610(a) enumerates certain exceptions from execution immunity for the "property in the United States of a foreign state, as defined in section 1603(a) . . . , used for a commercial activity in the United States."[7] Among these exceptions are two at issue on this appeal: where the foreign state has waived immunity, see id. § 1610(a)(1); and where "property is or was used for the commercial activity upon which the

---

[6] Hereafter, any references to "execution immunity" or "immunity from execution" refer also to immunity from arrest or attachment.

[7] With one exception not relevant here, section 1603(a) defines "foreign state" expansively to "include[ ] a political subdivision of a foreign state or an agency or instrumentality of a foreign state."

[underlying] claim is based," id. § 1610(a)(2). Thus, for the property of a foreign state to be subject to attachment or execution under the waiver or commercial activity exceptions, it must not only be (1) used generally for commercial activity in the United States, but it must also be (2) either (a) subject to a waiver of immunity, or (b) used for the specific commercial activity upon which the underlying claim was based.

Section 1610(b) contains additional exceptions to immunity for "any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States." Such property is not immune from attachment or execution where "the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly," id. § 1610(b)(1); or where "the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a)(2) . . . or (5) . . . regardless of whether the property is or was involved in the act upon which the claim is based," id. § 1610(b)(2). Thus, under § 1610(b) the property of an agency or instrumentality of a foreign state is subject to execution if the agency or instrumentality (1) is engaged in commercial activity in the United States and (2) either (a) has waived execution immunity, or (b) is subject to jurisdiction on the underlying claim under certain subsections of § 1605. See Part II.B.1, supra.

Section 1610(c) sets out the procedures for attaching or executing upon sovereign property:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a

12

reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

The cross-referenced provision, § 1608(e), concerns proceedings in which the foreign sovereign is in default:

> No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

Thus, two conditions must be met before execution against sovereign property under a default judgment may be effected: (1) "a reasonable period of time" must have elapsed since the judgment was entered and sent to the foreign state pursuant to § 1608(e), and (2) a court must have "ordered such attachment or execution" consistent with subsection (a) or (b) of § 1610.

### 3. General Conclusions

These FSIA provisions for jurisdictional and execution immunity yield certain recognized conclusions relevant to this appeal.

First, the FSIA's provisions governing jurisdictional immunity, on the one hand, and execution immunity, on the other, operate independently. As the Restatement (Third) of Foreign Relations Law of the United States explains, this means that "a waiver of immunity from suit does not imply a waiver of immunity from attachment of property, and a waiver of immunity from attachment of property does not imply a waiver of immunity from suit."

13

§ 456(1)(b) (1987); see also id. § 456 cmt. e (citing 28 U.S.C. §§ 1605, 1610); Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc., 385 F.3d 1206, 1218-19 (9th Cir. 2004) ("The scant post-FSIA authority that speaks on the subject suggests that the statute did not change the earlier rule that waiver of jurisdictional immunity does not constitute a waiver of immunity from attachment."), vacated on other grounds sub nom. Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi, 546 U.S. 450 (2006). Thus, recognition of exceptions to China's jurisdictional immunity in the Western District of Missouri case did not compel recognition of exceptions to the execution immunity of China's sovereign assets in the Southern District of New York turnover action.

Second, the execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself. For example, while a foreign state is not immune from suit for its commercial activities, see 28 U.S.C. § 1605(a)(2), or for damages caused by its tortious acts or omissions, see id. § 1605(a)(5), a plaintiff who prevails against the sovereign in such actions can generally execute the judgment only upon assets with respect to which the foreign state has waived immunity, see id. § 1610(a)(1), or that the foreign state used for the commercial activity upon which the claim was based, see id. § 1610(a)(2). The special protection afforded to the property of a foreign sovereign is due to the fact that "at the time the FSIA was passed, the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action." Connecticut Bank of Commerce v.

14

Republic of Congo, 309 F.3d 240, 255-56 (5th Cir. 2002); see also Republic of Philippines v. Pimentel, 553 U.S. 851, 866 (2008) ("[P]re-FSIA, common-law doctrine dictated that courts defer to executive determination of immunity because '[t]he judicial seizure' of the property of a friendly state may be regarded as 'an affront to its dignity and may . . . affect our relations with it.'" (second alteration and ellipsis in original; quoting Republic of Mexico v. Hoffman, 324 U.S. 30, 35-36 (1945)); Peterson v. Islamic Republic of Iran, 627 F.3d 1117, 1127-28 (9th Cir. 2010) ("Congress was aware that, although the restrictive theory of sovereign immunity from suit had become an accepted principle of international law by the time of the FSIA's enactment, 'the enforcement of judgments against foreign state property remain[ed] a somewhat controversial subject.'" (brackets in original; quoting H.R. Rep. No. 94-1487, at 27)). Indeed, our court has observed that the asymmetry between jurisdiction and execution immunity in the FSIA reflects a deliberate congressional choice to create a "right without a remedy" in circumstances where there is jurisdiction over a foreign state for purposes of obtaining a judgment, but its property is immune from attempts to execute the judgment:

> Congress passed the FSIA on the background of the views of sovereignty expressed in the 1945 charter of the United Nations and the 1972 enactment of the European Convention, which left the availability of execution totally up to the debtor state, and its own understanding as the legislative history demonstrates, that prior to 1976 property of foreign states was absolutely immune from execution. It is plain then that Congress planned to and did lift execution immunity "in part." Yet, since it was not Congress' purpose to lift execution immunity wholly and completely, a right without a remedy does exist in [some] circumstances[.]

15

De Letelier v. Republic of Chile, 748 F.2d 790, 799 (2d Cir. 1984) (citation omitted); see also Rubin v. Islamic Republic of Iran, 637 F.3d 783, 796 (7th Cir. 2011); Peterson v. Islamic Republic of Iran, 627 F.3d at 1128.

Third, the property of an agency or instrumentality of a foreign state is afforded narrower protection from execution than the property of the foreign state itself. See EM Ltd. v. Republic of Argentina, 473 F.3d 463, 472-73 (2d Cir. 2007); see also De Letelier v. Republic of Chile, 748 F.2d at 799 ("Congress sharply restricted immunity from execution against agencies and instrumentalities, but was more cautious when lifting immunity from execution against property owned by the State itself."); Rubin v. Islamic Republic of Iran, 637 F.3d at 797. This is evidenced in two relevant respects. While all property of an agency or instrumentality engaged in commercial activity under § 1610(b) is potentially subject to attachment or execution, attachment or execution of property of the foreign state itself is strictly limited to those assets that are themselves used for commercial activity. See 28 U.S.C. § 1610(a); see also, e.g., Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d at 130 (holding that § 1610(a) requires "[m]ore" than that property "will be used" or "could potentially be used" for commercial activity to be subject to execution (emphasis in original)). Further, unlike the property of an agency or instrumentality under § 1610(b)(2), the property of a foreign state itself is never automatically subject to attachment or execution merely because the underlying judgment relates to a claim for which the state is not immune from suit under § 1605(a)(2) or (5). See 28 U.S.C. § 1610(a).

With these principles in mind, we address petitioners' challenges on appeal.

16

C.    The Banks' Standing to Raise Execution Immunity

Petitioners submit that the district court erred in relying on FSIA execution immunity to dismiss this case because the Banks lacked standing to invoke this protection and China never appeared in these proceedings to claim it. On one prior occasion, this court has held assets immune from execution in a proceeding in which the sovereign itself did not enter an appearance. See De Letelier v. Republic of Chile, 748 F.2d at 795-98 (holding that even if Chile and its national airline were considered alter egos, circumstances did not come within any FSIA exception to execution immunity so as to permit attachment of airline assets in United States). We have not, however, specifically addressed the circumstances under which execution immunity may be considered sua sponte or at the behest of a third party, the issue raised directly on this appeal.

Those of our sister circuits that have considered the question have uniformly held that, at least where a judgment creditor seeks to enforce a judgment rendered against a foreign sovereign by attaching or executing upon its property, a district court may apply the FSIA's execution immunity provisions regardless of whether the foreign sovereign enters an appearance. See Rubin v. Islamic Republic of Iran, 637 F.3d at 801 [7th Cir.]; Peterson v. Islamic Republic of Iran, 627 F.3d at 1128-29 [9th Cir.]; Walker Int'l Holdings Ltd. v. Republic of Congo, 395 F.3d 229, 233 (5th Cir. 2004); see also Rubin v. Islamic Republic of Iran, 456 F. Supp. 2d 228, 231-33 (D. Mass. 2006). We now join them in concluding that the district court properly applied FSIA execution immunity to dismiss this case against the Banks despite the fact that China itself did not appear in the action to invoke such immunity.

17

In reaching this conclusion, we rely on the text and structure of the FSIA. See Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2156 (2010); Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir. 2010) ("Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." (brackets and internal quotation marks omitted)). Title 28 U.S.C. § 1609 states that "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter."[8] This language places no limit on the district court's authority to recognize execution immunity. To the contrary, the statute's use of the mandatory form – providing that such property "shall be immune" from execution absent a statutory exception – signals that, at least where there is no dispute that the targeted property is owned by a foreign sovereign, execution immunity inures in the property itself and applies without regard to how the issue is raised. See Rubin v. Islamic Republic of Iran, 637 F.3d at 799 ("It follows from [§ 1609's] language that the immunity does not depend on the foreign state's appearance in the case.").

That conclusion is only reinforced by considering § 1609 in context with § 1610(c). The latter provision states that "[n]o attachment or execution" pursuant to the immunity exceptions identified in § 1610(a) and (b), see Part II.B.2, supra (discussing exceptions),

---

[8] Petitioners do not – and cannot – dispute that their turnover petition targeted such property; their proposed order defined the subject assets in terms of ownership by China. See [Proposed] Turnover Order, Walters v. People's Republic of China, 18 Misc. 302 (S.D.N.Y. Nov. 24, 2009) (ordering respondents to pay over to petitioners "all funds of the PRC [i.e., People's Republic of China]" in the Banks' possession as necessary to satisfy the Missouri default judgment).

18

"shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." In short, § 1610(c) not only ensures that no execution upon sovereign property can take place without notice to the sovereign, but it also requires a prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property. See Rubin v. Islamic Republic of Iran, 637 F.3d at 800 (construing § 1610(c) to make "clear that even when the foreign state fails to appear in the execution proceeding, the court must determine that the property sought to be attached is excepted from immunity under § 1610(a) or (b) before it can order attachment or execution"); id. at 797 ("[A] judgment creditor seeking to invoke an exception to § 1609 immunity must first identify the property on which it seeks to execute."); Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d at 130 (citing FG Hemisphere Assocs., LLC v. République du Congo, 455 F.3d 575, 594 (5th Cir. 2006), for proposition that "prior to issuing a garnishment order, a district court must make factual findings that support application of the § 1610(a) exception to executional immunity, and therefore, the court must determine the location of each form of property at time of issuance of the order to ensure that it governs property located in the United States" (brackets and internal quotation marks omitted)). This statutory requirement is appropriately reflected in the practice of the district courts of this circuit. See, e.g., Olympic Chartering S.A. v. Ministry of Indus. & Trade of Jordan, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) (holding that "since the plaintiff in the instant case has

19

not identified any specific assets in its motion, the Court cannot adequately review the propriety of attaching the assets of the judgment-debtor" for purposes of satisfying § 1610(c)); Trans Commodities, Inc. v. Kazakstan Trading House, S.A., No. 96 Civ. 9782, 1997 WL 811474, at *3 (S.D.N.Y. May 28, 1997) (vacating restraining notice because no court had specifically passed upon propriety of attaching funds for purposes of satisfying § 1610(c)); see also Rubin v. Islamic Republic of Iran, 456 F. Supp. 2d at 231 [D. Mass.] ("Rule 69 therefore requires that the Court consider a particular property's immunity status under FSIA (and similar statutes) prior to allowing a judgment creditor to execute against it."). Indeed, a contrary construction would be difficult to reconcile with § 1610(a)(1), which, as discussed in Part II.D.2, infra, does not recognize a sovereign's failure to appear as a waiver of sovereign immunity.[9]

---

[9] The Seventh and Ninth Circuits have concluded that construing the FSIA to recognize execution immunity without regard to the foreign sovereign's appearance in the case is also consistent with pre-FSIA practice for the attachment and execution of sovereign property. See Rubin v. Islamic Republic of Iran, 637 F.3d at 800-01 [7th Cir.] ("[T]he attachment immunity of foreign-state property, like the jurisdictional immunity of foreign states, was historically determined without regard to the foreign state's appearance in the case."); Peterson v. Islamic Republic of Iran, 627 F.3d at 1126-27 [9th Cir.] (observing that prior to FSIA, "[t]he continuing practice of district courts deciding issues of immunity sua sponte was not limited to immunity from suit. Courts also independently resolved questions of immunity from execution."). At least one pre-FSIA decision corroborates this view. See Loomis v. Rogers, 254 F.2d 941, 944 (D.C. Cir. 1958) (upholding denial of writ of attachment with respect to property whose ownership by Italy was uncontested, even though Italy failed to appear to assert immunity), cited approvingly in Peterson v. Islamic Republic of Iran, 627 F.3d at 1126-27; but see id. at 1134-35 (N.R. Smith, J., dissenting) (observing that even if Loomis established historical practice "that practice was abrogated by the FSIA"). We do not explore the point further because we think the text and structure of the FSIA suffice to compel the conclusion that execution immunity can be recognized without regard to the foreign state's appearance. See Dobrova v. Holder, 607 F.3d at 301.

In urging otherwise, petitioners rely on our decision in Republic of Philippines v. Marcos, 806 F.2d 344 (2d Cir. 1986), mischaracterizing that case as holding "that immunity from execution or attachment under §§ 1609 and 1610 is a defense that is **exclusive** to the foreign sovereign and a third party cannot raise the defense on the foreign sovereign's behalf." Appellants' Reply Br. at 13 (emphasis in original). This reliance is doubly misplaced. First, Marcos concerned the foreign state's immunity from jurisdiction, not sovereign assets' immunity from execution. See 806 F.2d at 360. Second, the record in Marcos raised doubts as to whether the individuals asserting jurisdictional immunity were entitled to FSIA protections in any respect and, even if they were, whether the specific acts at issue were undertaken in a sovereign capacity. See id. By contrast, in this turnover action only execution, not jurisdictional, immunity is at issue, and both the sovereignty of the judgment debtor and the sovereign nature of the assets at issue are undisputed. Moreover, because China was served with the petition and has repeatedly invoked sovereign immunity for its assets as well as itself in a number of diplomatic communications relating to the Walters' lawsuit, there is no concern in this case that the Banks' invocation of execution immunity to avoid a turnover order directed at sovereign assets in their possession somehow interferes with the foreign sovereign's ability to exercise its rights. Cf. Rubin v. Islamic Republic of Iran, 408 F. Supp. 2d 549, 557 (N.D. Ill. 2005) (identifying such concern in denying third-party standing), rev'd 637 F.3d 783 (7th Cir. 2011).

To the extent that a court has the power, or even duty, to consider a question sua sponte, it is hardly necessary to speak of "third-party standing." If a court may consider an

21

issue on its own motion, it does not matter what triggers the court's inquiry. The court may consider the issue once it is suggested by <u>any</u> party – or, for that matter, non-party – even if there is no reason to confer a special right of "third-party standing" on that party. In any event, the general rule against third-party standing is a "judicially self-imposed" and "prudential" limitation, rather than a constitutional one. <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984); <u>see also</u> <u>Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 100-01 (2d Cir. 2007). As such, it must yield to a contrary statute. <u>See</u> <u>Leibovitz v. N.Y.C. Transit Auth.</u>, 252 F.3d 179, 186 (2d Cir. 2001). That is this case. As previously discussed, the FSIA, by its terms, authorizes consideration of sovereign immunity from both jurisdiction and execution even in the absence of an appearance by the sovereign. <u>See</u> <u>Walker Int'l Holdings Ltd. v. Republic of Congo</u>, 395 F.3d at 233 ("[T]he very language of the FSIA makes clear that the [sovereign's] presence is irrelevant[.]").

In arguing to the contrary, petitioners contend that sovereign immunity is an affirmative defense. The point is debatable. <u>See</u> <u>Frolova v. U.S.S.R.</u>, 761 F.2d 370, 373 (7th Cir. 1985) (observing that legislative history's characterization of sovereign immunity as affirmative defense "is not entirely accurate"); <u>see also</u> <u>Verlinden B.V. v. Cent. Bank of Nigeria</u>, 461 U.S. at 493 n.20; <u>Rubin v. Islamic Republic of Iran</u>, 637 F.3d at 799 n.15. We need not, however, resolve the question because "[b]oth the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule." <u>Snider v. Melindez</u>, 199 F.3d 108, 112 (2d Cir. 1999). For instance, although the statute of

22

limitations is ordinarily "an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver," John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008), district courts may dismiss an action sua sponte on limitations grounds in certain circumstances where "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted," Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (cited in Snider v. Melindez, 199 F.3d at 112); but cf. Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987) (discouraging sua sponte consideration of limitations defense). Similarly, res judicata is a waivable defense that a court is nonetheless free to raise sua sponte. See Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir. 1998) ("[W]hile [res judicata] or similar defenses are ordinarily not to be recognized when not in the answer, no absolute bar to the consideration of such claims exists." (internal quotation marks and ellipsis omitted)); see also Arizona v. California, 530 U.S. 392, 412 (2000).

So too with sovereign immunity. We identify no doctrinal bar to a district court's applying execution immunity on its own initiative consistent with the terms of the FSIA. See Walker Int'l Holdings Ltd. v. Republic of Congo, 395 F.3d at 233 (identifying no authority for "proposition that it is the sovereign's exclusive right to raise the issue of sovereign immunity under the FSIA" (emphasis in original)).[10] We therefore conclude that, where a

---

[10] Petitioners' counsel conceded this point at oral argument. Questioned why, even if a federal court is not obligated to address execution immunity sua sponte, it should not be permitted to do so, counsel acknowledged that he was aware of no authority or reason precluding such consideration. See Dec. 1, 2010 Oral Argument Recording at 10:21:40.

23

judgment creditor seeks to enforce a judgment against an undisputed foreign sovereign by collecting against what are undisputed sovereign assets, a court may apply the immunity protections of the FSIA even if the sovereign does not appear in the action.[11] We therefore reject petitioners' standing challenge as without merit.

D.     Waiver of Execution Immunity

Petitioners submit that the district court nevertheless erred in failing to recognize that China had waived execution immunity under § 1610(a)(1) both by the commercial and tortious conduct underlying the Missouri default judgment and by its failure to appear in this proceeding and to assert sovereign immunity. We reject both waiver theories as inconsistent with the terms of the FSIA specifically and the doctrine of waiver generally.

1.     Waiver by Commercial or Tortious Conduct Under the FSIA

The contention that China waived immunity from execution through the same alleged commercial and tortious conduct relied on by the Missouri district court to exercise § 1330(a) subject matter jurisdiction is incompatible with the text of the FSIA. Notably, in entertaining the Walters' suit against China, the district court for the Western District of Missouri did not

---

[11] We need not resolve here any complications that may arise where the sovereign status of the judgment debtor or the sovereign ownership of the targeted property is in doubt. See generally Rubin v. Islamic Republic of Iran, 637 F.3d at 800 n.16 (noting complication when foreign instrumentality has "questionable claim to jurisdictional immunity"). Nor need we determine the applicable burden-of-proof framework for execution immunity because the factors establishing immunity in this case are set forth in petitioners' own papers. Cf. Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.7 (2d Cir. 2001) (holding in jurisdictional immunity context that where "plaintiff concedes that the defendant is a foreign sovereign," defendant's burden of presenting prima facie case of sovereignty is lifted).

find any waiver of jurisdictional immunity by the foreign state. See 28 U.S.C. § 1605(a)(1). Rather, it relied upon the FSIA's specific exceptions to jurisdictional immunity based upon "commercial activity" and "tortious act or omission." Id. § 1605(a)(2), (a)(5).[12] As detailed in Part II.B.3, supra, the FSIA provides no similar exceptions to execution immunity on these grounds. See id. § 1610. A comparison of the plain language of §1605 with § 1610, see Part II.B.3, supra, together with application of the construction principle expressio unius est exclusio alterius, see, e.g., Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 221 (2d Cir. 2009) (referring to "familiar principle" that "the mention of one thing implies the exclusion of the other" (internal quotation marks omitted)), defeats petitioners' attempt to use commercial or tortious conduct as the basis for a waiver of execution immunity.

Indeed, petitioners' unsupported assertion that China's commercial activities in the United States "constitute[ ] a waiver of immunity not only from jurisdiction, but also of immunity from execution," Appellants' Br. at 31, mistakenly conflates jurisdiction and execution immunity, compare 28 U.S.C. §§ 1604-1607, with id. §§ 1609-1611. As

---

[12] Notably, the FSIA itself does not speak in terms of a sovereign's "waiving" sovereign immunity by engaging in commercial activity. Rather, the statute, which comprehensively sets forth the "principles" by which "[c]laims of foreign states to immunity should henceforth be decided" by American courts, 28 U.S.C. § 1602, simply provides that a foreign state "shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter," id. § 1604, and further provides that in cases covered by the exceptions at issue, the "foreign state shall not be immune," id. § 1605(a). In other words, in cases within these exceptions, the FSIA does not confer immunity on the foreign state, and then provide that the foreign state waives immunity by engaging in specified conduct; it simply does not provide immunity in the specified circumstances. It is thus a complete non sequitur to argue that other provisions of the statute that permit "waiver" implicate these exceptions in any way.

previously discussed in Part II.B.3, <u>supra</u>, the FSIA's distinct treatment of these two types of immunity indicates that "a waiver of immunity from suit does not imply a waiver of immunity from attachment of property," and vice versa. <u>Restatement (Third) of Foreign Relations Law of the United States</u> § 456(1)(b); <u>see also</u> <u>Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.</u>, 385 F.3d at 1218-19. The narrower scope of jurisdictional immunity under §§ 1604-1607, relative to the scope of execution immunity under §§ 1609-1611, reinforces this point. <u>See</u> <u>De Letelier v. Republic of Chile</u>, 748 F.2d at 798-99. Petitioners identify no basis in law to conclude that any of China's U.S.-directed conduct should be deemed a waiver of execution immunity, as distinct from jurisdictional immunity.

<u>First City, Texas-Houston, N.A. v. Rafidain Bank</u>, 281 F.3d 48 (2d Cir. 2002), cited by petitioners, does not support their position. There, we held that a "waiver [of jurisdictional immunity] by a foreign state under section 1605(a)(2), rendering it a party to an action, is broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case, including discovery pertaining to the judgment debtor's assets." <u>Id.</u> at 53-54. Petitioners contend that "jurisdiction through proceedings to aid collection of a money judgment" necessarily includes jurisdiction to enforce a judgment through attachment or execution. Whether or not that is correct, the existence of subject-matter jurisdiction alone does not entitle petitioners to execute upon sovereign assets. In <u>First City</u> we held that subject-matter jurisdiction, once established through the applicability of an exception to jurisdictional immunity under § 1605, continues

26

through post-judgment enforcement proceedings, including discovery of assets that might be subject to attachment or execution. We did not, however, hold that a waiver of jurisdictional immunity reaches beyond the discovery of such assets to waive the execution immunity that might attach to the property itself. Indeed, the structure of the FSIA, clearly separating these two types of immunity, precludes reading First City to entail that jurisdiction over China for purposes of petitioners' underlying claims also entitles petitioners to execute against any property of China to enforce the Missouri default judgment.

Accordingly, we reject this prong of petitioners' waiver argument.

2. Waiver by Failure to Appear

The contention that China implicitly waived execution immunity by failing to appear in this turnover proceeding is equally unavailing. To be sure, the FSIA provides that immunity is lost if "the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication." 28 U.S.C. § 1610(a)(1) (emphasis added). But such a waiver, whether explicit or implicit, requires the "intentional relinquishment of a known right." Schipani v. McLeod, 541 F.3d 158, 159 n.3 (2d Cir. 2008) (emphasis in original; internal quotation marks omitted). Nothing in the text of the FSIA signals that Congress intended any lesser standard for the waiver of sovereign immunity. To the contrary, the legislative history of § 1610(a)(1) indicates that Congress contemplated that waiver of execution immunity would be accomplished by some affirmative act of the foreign sovereign: "A foreign state may have waived its immunity from execution, inter alia, by the provisions of a treaty, a contract, an official statement, or certain steps taken by the foreign

27

state in the proceedings leading to judgment or to execution." H.R. Rep. No. 94-1487, at 28. A mere failure to appear is not a sufficiently affirmative act to indicate intentional relinquishment of immunity, particularly not in this case where China has consistently maintained its jurisdictional and execution immunity in diplomatic communications. See Rubin v. Islamic Republic of Iran, 637 F.3d at 800 n.17 (noting in execution immunity context that Seventh Circuit had "rejected the notion that a foreign state's failure to make an appearance before the court could itself constitute an implicit waiver of sovereign immunity").

Comparison with decisions in the jurisdictional immunity context confirms this view. See H.R. Rep. No. 94-1487, at 28 (stating that waivers of execution immunity under § 1610(a)(1) are "governed by the same principles that apply to waivers of immunity from jurisdiction under section 1605(a)(1)"). In that area, our precedent instructs that "the implied waiver provision of Section 1605(a)(1) must be construed narrowly." Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239, 243 (2d Cir. 1996) (internal quotation marks omitted). Accordingly, we have been reluctant to identify a waiver of jurisdictional immunity in the absence of an affirmative indication of a conscious decision by the foreign sovereign. See, e.g., Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1991) (noting that legislative history of § 1605(a)(1) provides examples of waiver involving "circumstances in which the waiver was unmistakable," and that "courts have been reluctant to find an implied waiver where the circumstances were not similarly unambiguous" (citing H.R. Rep. No. 94-1487, at 18)); see also Rodriguez v. Transnave Inc., 8 F.3d 284, 287

28

(5th Cir. 1993); Frolova v. U.S.S.R., 761 F.2d at 378.  Indeed, we have declined to find waiver of jurisdictional immunity in much closer cases than the present one.  See, e.g., Cabiri v. Gov't of Republic of Ghana, 165 F.3d 193, 201-03 (2d Cir. 1999) (holding that foreign state's initiation of eviction action in United States did not impliedly waive jurisdictional immunity with respect to unrelated counterclaims); Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A., 727 F.2d 274, 277-78 (2d Cir. 1984) (finding no waiver of sovereign immunity where foreign state engaged in motion practice but had not yet filed responsive pleading).

Accordingly, we also reject this prong of petitioners' waiver argument, and conclude that there is no merit to petitioners' claim that China waived execution immunity so as to require reversal of the challenged dismissal.

E.      Satisfaction of § 1610(a)(2) and § 1610(c) Requirements

Petitioners fault the district court for dismissing their petition in part "without prejudice to the Walters filing a new Petition narrowly tailored to the requirements of § 1610(a)(2)" and "pursuant to § 1610(c)."  Order ¶¶ 4-5, Walters v. People's Republic of China, No. 18 Misc. 302 (S.D.N.Y. Feb. 2, 2010).  They insist that their petition satisfied § 1610(c) and, specifically, that § 1610(c) does not indicate – as the district court appeared to assume – "that a court issuing an attachment or execution has any independent duty or mandate to determine whether the property at issue satisfies § 1610(a) or (b)."  Appellants' Br. at 43.  Petitioners further contend that they should not be faulted for failing to identify the assets at issue with greater specificity because the banks have resisted discovery.  We are

29

not persuaded.

As previously observed, § 1610(c) states that "[n]o attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution." Through this explicit cross-reference to § 1610(a) and (b), § 1610(c) clearly signals that execution depends on a judicial determination that the property at issue falls within one of the exceptions to immunity set forth in those subsections. See Part II.C, supra.

Here, petitioners have not identified the specific accounts or funds held by the Banks upon which they seek to execute judgment, much less have they shown that such specified assets fall within one of § 1610's exceptions to immunity. Section 1610(a) states that only sovereign property that is in fact "used for a commercial activity in the United States" may be subject to execution. See, e.g., Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d at 130. Further, § 1610(a)(2) – which the district court reasonably determined was the only potentially applicable exception to immunity in this case – permits execution only on commercial property that "is or was used for the commercial activity upon which the claim is based." 28 U.S.C. § 1610(a)(2) (emphasis added). The district court correctly dismissed the petition without prejudice to resubmitting a new petition tailored to these FSIA requirements.

In urging otherwise, petitioners seek to shift the burden of identifying specific, recoverable assets onto the Banks, as custodians of China's property. It is not unreasonable, however, for this burden of identification to remain upon petitioners, who have not yet

30

exhausted their powers of discovery pertaining to the judgment debtor's assets pursuant to Fed. R. Civ. P. 69(a) and our holding in First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d at 53-54. See Part II.D.1, supra. Insofar as petitioners complain that the Banks successfully moved to quash subpoenas duces tecum in prior proceedings in the Southern District of New York, petitioners there sought information pertaining to China's assets outside of the United States, which were held to be categorically immune from execution under the FSIA. See Walters v. People's Republic of China, 672 F. Supp. 2d at 575. Nothing in that ruling, which petitioners did not appeal, prevents them from pursuing Rule 69 discovery from the Banks as to China's potentially recoverable assets held within the United States.

Accordingly, we identify no error in the district court's partial dismissal without prejudice to replead.

F.      Assets of China's Agencies or Instrumentalities

Petitioners submit that under § 1610(a) and (b) they are entitled to collect assets in satisfaction of the Missouri default judgment from China's agencies and instrumentalities, as well as from the sovereign itself. To the extent petitioners failed to raise this argument in the district court, it is not properly preserved for appellate review. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). Moreover, petitioners have made no effort to satisfy the requirements of § 1610(c) by identifying specific assets held by a Chinese agency or instrumentality that fall within § 1610's exceptions to immunity. See Part II.E, supra. In any event, to support their position, petitioners renew their argument that China has waived

31

its immunity, a contention that we have already rejected for the reasons stated in Part II.D, supra.

Petitioners' contention fails for two further reasons. First, relying on § 1603's broad definition of "foreign state" to include "an agency or instrumentality of a foreign state," petitioners appear to assume that they are entitled to execute the Missouri default judgment upon the full scope of sovereign assets potentially subject to execution under the FSIA. The default judgment, however, was entered against China only. While that judgment references one alleged instrumentality of China, it does so only to state that "[a]ll of Plaintiffs' claims" against this entity "are dismissed without prejudice." Final Judgment at 7, Walters v. Century Int'l Arms, Inc., No. 93-5118-CV-SW-1 (W.D. Mo. Oct. 22, 1996). There is a "presumption that a foreign government's determination that its instrumentality is to be accorded separate legal status" will be honored. First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 628 (1983). We have accordingly recognized a further "presumption that assets of a foreign government instrumentality could not be executed upon to satisfy a judgment against a parent foreign government," which can be "overcome only if the party seeking attachment carrie[s] its burden of demonstrating that the instrumentality's separate juridical status [i]s not entitled to recognition." EM Ltd. v. Republic of Argentina, 473 F.3d at 477; see also De Letelier v. Republic of Chile, 748 F.2d at 795 (holding that judgment creditor was not entitled to collect assets of entity owned by foreign sovereign because it had not met burden of showing that corporate separateness of entity was not entitled to recognition). The record in this case is bereft of any reason to

32

conclude that the separate legal status of any agency or instrumentality of China should be disregarded for purposes of allowing petitioners to execute the judgment against assets of such entities. The Missouri default judgment thus provides no basis for collecting from any entity other than China itself.

Second, petitioners' alternative argument that they are entitled to collect from China's agencies or instrumentalities pursuant to § 1610(b) is not supported by the terms of that provision. Section 1610(b)(1) provides, "[i]n addition to subsection (a)," that "any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from . . . execution . . . if . . . the agency or instrumentality has waived its immunity from . . . execution." This exception to immunity applies only if the immunity of the agency or instrumentality – rather than that of the foreign state itself – has been waived. Petitioners have made no showing of such a waiver. Section 1610(b)(2) states that the property of an agency or instrumentality "engaged in commercial activity in the United States" is not immune if the underlying "judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a)(2) [commercial activity] . . . or (5) [tortious act or omission] . . . regardless of whether the property is or was involved in the act upon which the claim is based." Again, because petitioners' default judgment is against China itself, rather than an agency or instrumentality, the judgment does not relate to a claim "for which the agency or instrumentality is not immune" from jurisdiction. Petitioners, therefore, cannot avail themselves of either of § 1610(b)'s exceptions to execution immunity.

33

We need not here decide whether petitioners might ever be in a position to execute judgment against a specified Chinese agency or instrumentality that was an alter ego of China itself. See, e.g., Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 252 (2d Cir. 2000) (identifying circumstances under which presumption of separateness between government entities may be overcome). We conclude only that the record in this case supports no exception to execution immunity.

## III. Conclusion

We conclude as follows:

(1) Notwithstanding China's failure to appear in this turnover proceeding and there to assert the immunity of its sovereign assets from execution, the district court did not err in relying on the FSIA to dismiss this turnover action.

(2) China did not waive immunity from execution under § 1610(a)(1).

(3) The district court did not err in dismissing the petition without prejudice to the extent it failed to satisfy the requirements of § 1610(a)(2) and § 1610(c).

(4) Petitioners are not entitled to execute the Missouri default judgment against China by collecting assets from China's agencies or instrumentalities or from any entity other than China itself.

We have considered petitioners' remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.